## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SHARON MARMON-KACZOROWSKI    *

       Plaintiff             *

        v.                *

                                      Civil Action No.: 04-1470

CONTINENTAL CASUALTY    *
COMPANY

                             *

       Defendant        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      Defendant, Continental Casualty Company ("Continental"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby submits this Memorandum in Support of its Motion for Summary Judgment, and in support thereof states as follows.

### I.    INTRODUCTION

      Continental has been named as a defendant in a lawsuit filed by Plaintiff, Sharon Marmon-Kaczorowski ("Plaintiff" or "Ms. Marmon-Kaczorowski"). Plaintiff's Complaint is founded upon a claim for long-term disability ("LTD") benefits pursuant to a Continental Policy, Policy No. SR-83090156 (the "Plan"), a copy of which is attached hereto as *Exhibit 1*, issued to an employee welfare benefit plan maintained by Plaintiff's employer, Computer Sciences Corporation ("CSC"). As this case involves a claim made pursuant to an employee welfare benefit plan, Plaintiff's claim is governed by federal law, namely the Employee Retirement Income Security Act ("ERISA") of 1974, as amended 29 U.S.C. § 1100, *et. seq.* and § 1132. Specifically, this matter arises from a dispute over the denial of LTD benefits claimed under the

Plan. The Plaintiff has alleged that Continental improperly denied disability benefits to her which were due under the Plan.

The arbitrary and capricious standard of review is applicable as the Plan confers discretionary authority upon the claims administrator with regard to benefits decisions. Therefore, Continental's decision to deny LTD benefits may be properly reversed only if it is found that Continental abused its discretion. Under this standard of review, summary judgment in favor of Continental is appropriate because Continental's decision to deny LTD benefits was based on substantial evidence in the administrative record before it, was reasonable and was not an abuse of its discretion. The medical evidence provided to Continental by Plaintiff was insufficient to show that Plaintiff was "Disabled" as that term is defined by the Plan. The Plan's clear and unambiguous definition of "Disability," when applied to the evidence in Continental's administrative record, supports Continental's determination that Ms. Marmon-Kaczorowski failed to establish that she was unable to perform the material and substantial duties of her regular occupation. There is no genuine issue as to any material fact and the Defendant is entitled to judgment as a matter of law.

## II.    FACTS[1]

Plaintiff was hired by CSC as a manager on January 2, 2001. See Bates CCC00024. At the time her employment with CSC ceased on June 19, 2002, she worked as a senior manager. See id.; Complaint, ¶ 4. As a senior manager, Ms. Marmon-Kaczorowski's job responsibilities

---

[1]    A copy of the administrative record, with a copy of the applicable Plan and a complete copy of all documents submitted to Continental to date, is being filed contemporaneous hereto as *Exhibit 1* to the Affidavit of Joye M. Kelly, ACS, UND, in support of this Motion.

-2-

included, *inter alia*, working with a computer and telephone and assisting in meetings. See Bates CCC00131. Ms. Marmon-Kaczorowski was insured under her employer's Long-Term Disability Plan, administered by her employer, Computer Sciences Corporation, and underwritten by Continental. The Plan provides LTD benefits for employees who meet the Plan's requirements.

On or about July 19, 2002, Ms. Marmon-Kaczorowski completed her Claim form under the Plan. See Bates CCC00024-00025, a copy of which is attached hereto as *Exhibit 2*. According to Ms. Marmon-Kaczorowski's Claim Form which was completed by her attending physician, Mary Ann Connor, D.O., her alleged disability commenced on June 20, 2002 due to "uncontrolled hypertension," "non cardiac chest pain," "chronic pain," "ambulatory dysfunction," "asthma," and "migraine." Bates CCC00025.

In order to receive LTD benefits under the Plan, Ms. Marmon-Kaczorowski was required to meet the definition of "Disability" under the Plan. The Plan provides the following definition of "Disability":

> **HOW DO *WE* DEFINE DISABILITY?**
> *Disability* or *Disabled* means that *You* satisfy the Occupation Qualifier or the Earnings Qualifier as defined below.
>
> **Occupation Qualifier**
> "*Disability*" means that during the *Elimination Period* and the following 24 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
> 1.    continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and
> 2.    not working for wages in any occupation for which *You* are or become qualified by education, training or experience.
>
> After the *Monthly Benefit* has been payable for 24 months, "*Disability*" means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
> 1.    continuously unable to engage in any occupation for which

*You* are or become qualified by education, training or experience; and

2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

**Earnings Qualifier**

*You* may be considered *Disabled* during and after the *Elimination Period* in any Month in which *You* are *Gainfully Employed*, if an *Injury* or *Sickness* is causing physical or mental impairment to such a degree of severity that *You* are unable to earn more than 80% of *Your Monthly Earnings* in any occupation for which *You* are qualified by education, training or experience. On each anniversary of *Your Disability*, *We* will increase the *Monthly Earnings* by the lesser of the current annual percentage increase in CPI-W, or 10%.

*You* are not considered to be *Disabled* if *You* earn more than 80% of *Your Monthly Earnings*. Salary, wages, partnership or proprietorship draw, commissions, bonuses, or similar pay, and any other income *You* receive or are entitled to receive will be included. Sick pay and salary continuance payments will not be included. Any lump sum payment will be prorated, based on the time over which it accrued or the period for which it was paid.

Bates CCC00010 (emphasis in original).

In the course of processing Ms. Marmon-Kaczorowski's claim, Continental contacted

Ms. Marmon-Kaczorowski for an interview on August 6, 2002. At that time, Ms. Marmon-

Kaczorowski indicated that she had stopped working and that she was admitted to the hospital

for four days due to severe pain from fibromyalgia. Ms. Marmon-Kaczorowski further indicated

that her symptoms were severe pain, difficulty sleeping and walking due to pain in her legs. She

noted that she was using a cardiac monitor and that she walked with the use of a cane. Ms.

Marmon-Kaczorowski also noted that she was able to drive, use her home computer for e-mails

and, if she was feeling well, she was able to do light house work. She indicated that her job

duties required her to work on the computer and telephone, trouble shooting and providing

-4-

assistance at meetings. She also indicated that she was able to take breaks. See Bates

CCC00130-00131, a copy of which is attached hereto as *Exhibit 3*.

Continental also received information from CSC regarding her job duties in the form of a

Physical Demands Analysis. This information indicated that Ms. Marmon-Kaczorowski was

required to work with the computer and telephone and to assist in team and client meetings.

Continental was also advised that Ms. Marmon-Kaczorowski was able to work at her own pace

and that there was no lifting required in her job. See Bates CCC00120-00121, a copy of which is

attached hereto as *Exhibit 4*.

Given this information, Continental thereafter sent a request to Dr. Connor asking her if

Ms. Marmon-Kaczorowski was capable of performing activities involving sitting, typing, using a

telephone and participating in meetings. If not, Continental asked Dr. Connor to provide medical

documentation to support any functional limitation that would prevent Ms. Marmon-

Kaczorowski from doing so. See Bates CCC00110.

Continental received a Functional Assessment Tool form signed by Dr. Connor on

August 27, 2002. Dr. Connor indicated that Ms. Marmon-Kaczorowski stated that she was

unable to function for more than 10 minutes on the telephone or sitting at a computer. Dr.

Connor also noted Ms. Marmon-Kaczorowski's symptoms of fatigue and her need to rest

intermittently. However, Dr. Connor did not include any treatment notes, diagnostic results, or

physical exam findings to support Ms. Marmon-Kaczorowski's inability to work. See Bates

CCC00114, a copy of which is attached hereto as *Exhibit 5*.

Continental made various attempts to obtain Ms. Marmon-Kaczorowski's medical

records; see, e.g., Bates CCC00100-00101, CCC00104, CCC00134, however, it never received

-5-

any other treatment notes or other medical documentation in support of her disability claim. On

or about September 11, 2002, Continental denied Ms. Marmon-Kaczorowski's claim and

concluded:

> While we acknowledge that you are fatigued on occasion,
> experience aches and pain, and use a cane to ambulate, we have
> received no medical information or diagnostic testing to support
> that your symptoms would prevent you from continuously
> performing the duties of your occupation. Therefore, as no
> medical information has been provided to prove a total disability,
> your claim has been denied.

Bates CCC00110, a copy of which is attached hereto as *Exhibit 6*.

Continental's denial was further supported by the fact that Ms. Marmon-Kaczorowski

continued to work in her occupation for nearly six months after initially consulting with her

primary care provider. See Part IV.D.2, infra. Moreover, as discussed in greater detail in Part

IV.D.3, infra, the medical records during the period following Ms. Marmon-Kaczorowski's

claimed date of disability, June 20, 2002, did not reflect that her condition notably changed and

still did not show that she was unable to perform the material and substantial duties of her regular

occupation. For example, a Bruce protocol stress test was performed on June 23, 2002 wherein

Ms. Marmon-Kaczorowski exercised for five minutes, reaching 86% of the maximum predicted

heart rate and a peak workload of 6 METS. See Bates CCC00075-00078. Moreover, on July 2,

2002, Ms. Marmon-Kaczorowski consulted with a rheumatologist, Dr. Sheerin Javed, who

encouraged her to start aerobic cardiovascular exercises. See Bates CCC00088. Similarly, on

July 15, 2002, a physical therapist at Delaware Curative recommended Ms. Marmon-

Kaczorowski to engage in a course of progressive muscle strengthening, aerobics and Tai Chi.

See Bates CCC00065-00066.

-6-

On October 31, 2002, Continental received Ms. Marmon-Kaczorowski's request for

reconsideration of her claim for benefits. See Bates CCC00099, CCC00105. Ms. Marmon-

Kaczorowski also provided Continental with "further medical records" on or about November 18,

2002. See Bates CCC00041.

Continental referred these materials to its Appeals Department for further review. The

Appeals Department conducted a full medical review of all the evidence that was provided

during the course of Ms. Marmon-Kaczorowski's claim, and determined that its prior decision to

deny benefits was correct. See Bates CCC00027-00029, a copy of which is attached hereto as

*Exhibit 7.*

In the course of the review which led to that conclusion, Continental reviewed medical

and physical therapy records obtained from: (1) Mary Ann Connor, D.O., Ms. Marmon-

Kaczorowski's primary care provider; (2) Scott Harrison, M.D.; (3) Ying Zhu, M.D.; (4)

Delaware Curative; (5) Christiana Care Health Services; (6) Papastavros' Associates; (7) Sheerin

Javed, M.D., a rheumatologist; and (8) HealthSouth. Additionally, Continental reviewed various

x-rays, laboratory results and Ms. Marmon-Kaczorowski's Claim Form. See Bates CCC00027.

In addition, as is more fully discussed in Part IV.D.4, infra, Eugene Truchelut, M.D.,

Continental's consulting internist, conducted a full medical review of Ms. Marmon-

Kaczorowski's medical records on December 30, 2002, and concluded that she was able to

engage in sedentary to light levels of activity and that her medical records did not support a

functional impairment that would preclude her from performing the occupational demands of her

own job. See Bates 00033-00034.

Upon completing its review, Continental stated:

> In light of the information presented for review that included the
> information as stated above, the opinion of the Medical Consultant
> of whose expertise we further relied on, your client's self-reported
> daily activities, and the physical requirements of her occupation,
> we have concluded that the limitations that she indicates are not
> commensurate with the medical findings of fact and appear to be
> self-limiting. The treating physician(s) further provide limitations
> based on your client's self reported complaints. The findings on
> physical/clinical examination have provided little to no explanation
> for your client's continued self-reported complaints and are not
> commensurate with any condition(s) that would reasonably be
> expected to cause functional impairment and that would
> *continuously* preclude your client from her occupational work
> activity. While it may be your client's contention that she is not
> able to work, the evidence presented does not support this.
>
> Further, a diagnoses and continued treatment in and of itself does
> not document ***"Disability"*** as defined in the terms of the contract
> without medical documentation that would support a functional
> impairment exists, and that would support inability of your client
> to perform her *sedentary-type* occupational work activity.
>
> Based on the totality of the information before the Committee, it
> has no choice but to find the previous decision of September 11,
> 2002, to be correct and proper.

Bates CCC00028-00029 (emphasis in original).

On or about October 7, 2004, Ms. Marmon-Kaczorowski filed a Complaint in the

Superior Court of Delaware for New Castle County, alleging that Continental's denial of her

LTD claim was improper. On November 24, 2004, Continental removed the action to this

Court.

## III.    STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate where "there is no genuine issue as to any material fact and . . . the moving party is

-8-

entitled to summary judgment as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>Miller v. Delaware, Dep't of Probation and Parole</u>, 158 F.Supp.2d 406, 408-09 (D. Del. 2001). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986) (citations omitted).

In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. <u>Goodman v. Mead Johnson & Co.</u>, 534 F.2d 566, 573 (3d. Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, Rule 56(c) requires that the non-moving party "do more than simply show that there is some metaphysical doubts as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c) (2005). For purposes of summary judgment, a dispute about a fact is genuine "if the evidence is such that a reasonably jury could return a verdict for the nonmoving party," and a fact is material if, when applied to the substantive law, it affects the outcome of litigation. <u>Anderson</u>, 477 U.S. at 248. While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

-9-

If the movant demonstrates that there is no genuine issue of material fact and that it is

entitled to summary judgment as a matter of law, the non-moving party must, in order to

withstand the motion for summary judgment, demonstrate that a triable issue of fact exists for

trial. Celotex, 477 U.S. at 324. The existence of only a "scintilla of evidence" is not enough to

defeat a motion for summary judgment. Instead, the evidentiary materials must show facts from

which the finder of fact could reasonably find for the non-moving party. Anderson, 477 U.S. at

252.

## IV.    ARGUMENT

### A.    *This Court Should Apply The Arbitrary And Capricious Standard Of Review Accorded To The Decisions Of Plan Administrators Whose Decisions May Properly Be Reversed Only If Found To Be An Abuse Of Discretion.*

#### 1.    *The Plan Confers Upon Standard Discretionary Authority To Determine Disability Benefits.*

The arbitrary and capricious standard of review should be applied in determining the

reasonableness of Continental's decision to deny Ms. Marmon-Kaczorowski's claim for LTD

benefits. This case concerns the interpretation and application of provisions of an employee

welfare benefit plan and, as such, the Employee Retirement Income Security Act of 1974, as

Amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, governs this lawsuit. The scope of discovery in

ERISA benefits cases is integrally linked to the standard of review, and the admissibility of

additional evidence outside of the administrative record. Pursuant to the Supreme Court's

decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), this Court is to

review Continental's determination relative to Ms. Marmon-Kaczorowski's claim for LTD

benefits under a *de novo* standard, "unless the benefit plan gives the administrator or fiduciary

-10-

discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

Id. at 115; see also Stratton v. E.I. Dupont De Nemours & Co., 363 F.3d 250, 253-54 (3d Cir.

2004). In Firestone, the Supreme Court considered for the first time the appropriate standard of

review in actions challenging an administrator's denial of a claim for benefits base on plan term

interpretations. The Court recognized that the ERISA statute "does not set out the appropriate

standard of review for actions under § 1132(a)(1)(B)." Id. at 115.

In determining the standard, the Court reasoned that ERISA plans and actions are guided

by trust principles:

> Trust principles make a deferential standard of review appropriate
> when a trustee exercises discretionary powers. See Restatement
> (Second) of Trusts § 187 (1959) ("[w]here discretion is conferred
> upon the trustee with respect to the exercise of a power, its exercise
> is not subject to control by the court except to prevent an abuse by
> the trustee of his discretion"). . . . A trustee may be given power to
> construe disputed or doubtful terms, and in such circumstances the
> trustee's interpretation will not be disturbed if reasonable.

Id. at 111. The Supreme Court in Firestone ruled that under § 1132(a)(1)(B) of ERISA, a de

novo standard of review does not apply if the benefit plan "gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

489 U.S. at 115. The Court also stated, "[t]rust principles make a deferential standard of review

appropriate when a trustee exercised discretionary powers . . . A trustee may be given power to

construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will

not be disturbed if reasonable." Id. at 111   See also Mitchell v. Eastman Kodak Co., 113 F.3d

433, 437 (3d Cir. 1997) (stating that where an ERISA plan affords the administrator discretionary

authority to determine eligibility for benefits or to construe the terms of the plan, the

-11-

administrator's interpretation of the plan will not be disturbed if reasonable); Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 520-21 (3d Cir. 1997) (stating that where the plan contains a clause granting discretion to the plan administrator, the plan administrator's decision to deny benefits will not be overturned if it was reasonable); Moench v. Robertson, 62 F.3d 553, 566 (3d Cir. 1995) (holding that the arbitrary and capricious standard of review applied to the interpretation of an employee stock ownership plan and the plan committee's interpretation would not be disturbed if its reading of the plan documents was reasonable). Accord Luby v. Teamster Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1180 (3d Cir. 1991) (stating that no "magic words," such as "discretion is granted . . .," need be expressly stated in order for the plan to accord the administrator discretion to interpret plan terms so long as the plan on its face clearly grants such discretion).

This court has enunciated the same standard. See, e.g., Sanderson v. Continental Cas. Corp., 279 F.Supp.2d 466, 472 (D. Del. 2003) (holding that where the plan terms grant discretion to the plan administrator or fiduciary to determine a claimant's eligibility for benefits, the decision is subject to review under the "arbitrary and capricious" standard of review); Skretvedt v. E.I. Dupont De Nemours & Co., 119 F.Supp.2d 444, 449-50 (D. Del. 2000) (stating that where discretionary authority is given, the administrator's interpretation of the plan will not be disturbed if reasonable), rev'd on other grounds, 268 F.3d 167 (3d Cir. 2001); Walling v. Brady, 917 F. Supp. 313, 321 (D. Del. 1996) (providing that where a trustee exercises discretion to interpret a plan, the trustee's interpretation will not be disturbed if reasonable), rev'd on other grounds, 125 F.3d 114 (3d Cir. 1997); Dewitt v. Penn-Del Directory Corp., 912 F. Supp. 707, 718 (D. Del. 1996) (applying the arbitrary and capricious standard of review where the plan

-12-

granted the administrator discretion), aff'd in part, rev'd in part on other grounds, 106 F.3d 514

(3d Cir. 1997).

Under the terms of the Plan, Continental, the claim fiduciary, has discretion to determine

a potential beneficiary's benefits for LTD benefits and reserves to Continental the authority and

control over the Plan.  The Plan provides:

> The Policy is delivered in and is governed by the laws of the
> governing jurisdiction and to the extent applicable by the
> Employee Retirement Income Security Act of 1974 (ERISA) and
> any amendments.  When making a benefit determination under the
> policy, *We* have discretionary authority to determine *Your*
> eligibility for benefits and to interpret the terms and provisions of
> the policy.

Bates CCC00008 (emphasis in original).

This language confers upon Continental as Claims Administrator discretionary authority

to interpret the Plan documents and to make claims decisions with respect to benefits under the

Plan.  See, e.g., Sanderson v. Continental Cas. Corp., 279 F.Supp.2d 466, 472-73 (D. Del. 2003)

(holding that the identical plan language explicitly vested discretion to determine eligibility for

benefits, and applying the arbitrary and capricious standard of review); Wadford v. Continental

Cas. Co., 261 F.Supp.2d 402, 409-10 (W.D.N.C. 2003) (holding that the identical plan language

clearly and unambiguously granted discretion to determine eligibility for benefits and to interpret

the terms of the plan).  Accordingly, the Plan grants discretion to Continental as is contemplated

by Firestone and its progeny and a deferential standard of review must be accorded to

Continental's decision respecting Ms. Marmon-Kaczorowski's claim for LTD benefits.

It is clear that the arbitrary and capricious standard of review applies in this case because

the plain language of the Plan, quoted above, gives Continental, as the claims fiduciary,

-13-

discretion to determine benefits.  The paramount issue in this case, therefore, is whether

Continental abused its discretion in its decision in denying Ms. Marmon-Kaczorowski's claim

for LTD benefits under the Plan.

> ## 2.    *Although A "Conflict Of Interest" May Appear To Exist Here, That Fact Should Not Lessen The Deference Accorded To The Decision Of The Continental Claims Administrator.*

Continental, serving both as the insurer and the claims administrator in this case,

acknowledges that it might be said to have acted under a conflict of interest[2] in determining Ms.

Marmon-Kaczorowski's LTD claim.  However, any conflict of interest which may be present

does not negate the application of the arbitrary and capricious standard of review in this case.

See Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387-88 (3d Cir. 2000) (holding that

when an insurance company both funds and administers benefits, it is generally acting under a

conflict that warrants application of a heightened form of the arbitrary and capricious standard of

review when reviewing the denial of benefits under ERISA, but does not present the type of

conflict of interest that would warrant discarding the arbitrary and capricious standard

altogether).  The Third Circuit has adopted "the sliding scale approach, and, accordingly, will

expect district courts to consider the nature and degree of apparent conflicts with a view to

shaping their arbitrary and capricious review of the benefits determinations of discretionary

decisionmakers." Pinto, 214 F.3d at 393. See also Stratton v. E.I. Dupont De Nemours & Co.,

363 F.3d 250, 254 (3d Cir. 2004) (affirming the district court's slight heightening of the arbitrary

---

[2]That is, Continental's decision to deny LTD benefits to Ms. Marmon-Kaczorowski
impacted its own financial interests because it "both determines eligibility for benefits,
and pays those benefits out of its own funds."  Pinto v. Reliance Standard Life Ins. Co.,
214 F.3d 377, 378 (3d Cir. 2000).

-14-

and capricious standard of review where the plan both funded and administered benefits).

Applying these principles, this Court must determine, based solely upon the record, whether Continental's review process was thorough and may be disturbed "only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Courson v. Bert Bell NFL Players Retirement Plan, 214 F.3d 136, 142 (3d Cir. 2000) (quoting Abnathya v. Hoffmann - La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)). A decision is supported by substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision. Id.

When presented with a case like this one in which the fiduciary has a conflict of interest, this Court must review the merits of Continental's decision to determine whether it was consistent with an exercise of discretion by a fiduciary, acting free of the interests which would conflict with those of the beneficiary. Pinto, 214 F.3d at 391; see also Stratton, 363 F.3d at 254. Therefore, pursuant to the holdings of Pinto and Stratton, this Court may lessen the deference normally given to Continental's decision to the extent necessary to counteract any negative bias which it determines to be evident from the claim file. See, e.g., Cord v. Reliance Standard Life Ins. Co., 362 F.Supp.2d 480, 484 (D. Del. 2005) (stating that the Third Circuit has held that if a plan administrator both funds and administers a plan, a heightened standard of review must be applied, and under the heightened standard, the reviewing court is "deferential, but not absolutely deferential," using a "sliding scale method intensifying the degree of scrutiny to match the degree of conflict."); Sanderson v. Continental Cas. Corp., 279 F.Supp.2d 466, 472 (D. Del. 2003) (finding that where the administrator also funds the plan it administers, conflict of interest must be considered in assessing the amount of deference to be given to its decision, and thus the modified or "heightened" arbitrary and capricious standard of review is appropriate); Russell v.

-15-

Paul Revere Life Ins. Co., 148 F.Supp.2d 392, 400 (D. Del. 2001) (same).

Moreover, the Supreme Court has also directed that such a conflict "must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (citations omitted). Therefore, where the court determines that a conflict of interest exists, the court should still uphold the administrator's decision if the decision was *reasonable*, and the court may weigh the conflict of interest as a "factor" in analyzing the reasonableness of the decision.

**B.**    ***In Reviewing Continental's Decision Under The Arbitrary And Capricious Or Heightened Arbitrary And Capricious Standard Of Review, This Court Should Confine Its Consideration To Documents And Facts Which Were Part Of The Administrative Record Upon Which Continental Made The Decision Which The Plaintiff Challenges.***

Because the purpose of the arbitrary and capricious standard of review is to determine the reasonableness of the determination at the time it was made, the reviewing court may only consider evidence that was contained in the administrative record at that time. See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997); Abnathya v. Hoffmann - La Roche, Inc., 2 F.3d 40, 48 n.8 (3d Cir. 1993). There appears to be broad agreement in both the Third Circuit and this Court that courts reviewing a fiduciary's decisions under the deferential "arbitrary and capricious" standard of review must confine that review to the evidence before the administrator or fiduciary who made the disputed decision at the time of his decision on benefits. See, e.g., Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004) (noting that the record for arbitrary and capricious review of an ERISA benefits denial is properly limited to the record before the plan administrator); Courson v. Bert Bell NFL Player Retirement Plan, 214 F.3d 136, 142 (3d Cir. 2000) (reviewing the Retirement Board's decisions under the arbitrary and capricious

-16-

standard of review on the basis of the administrative record before the Board at the time it made

its decision); Russell v. Paul Revere Life Ins. Co., 148 F.Supp.2d 392, 405 (D. Del. 2001)

(stating that in applying the arbitrary and capricious standard of review to a denial of an ERISA

disability insurance claim, review is limited to the record that was before the plan administrator

at the time it made its decision).

Under the facts and circumstances presented by this case, the scope of this Court's review

is properly limited to a review of the extensive administrative record available to Continental at

the time it made its decision.  Since such extrinsic evidence should not be considered, discovery

is unnecessary and should not be permitted by either party.

C.    *The Applicable Plan Terms.*

In addition to the Plan definition of "Disability," see Part II, pp. 3-4, supra, the Plan

provides:

> **TIME AND PAYMENT OF CLAIM**
> As soon as *We* have all necessary substantiating documentation for
> *Your Disability* claim, *Your* benefit will be paid on a Monthly
> basis, so long as *You* continue to qualify for it.
>
> *We* will pay benefits to *You* unless otherwise indicated.

Bates CCC00016 (emphasis in original).

The evidence within the administrative record, as argued more fully below, when applied

to this clear and unambiguous language, supports Continental's determination that Ms. Marmon-

Kaczorowski did not qualify for LTD benefits as she was unable to satisfy the definition of

"Disability" as provided under the Plan.

-17-

> **D.** *Summary Judgment In Favor Of Continental Is Appropriate Because Continental's Decision To Deny Ms. Marmon-Kaczorowski's LTD Claim Was Based On Substantial Evidence On The Basis Of The Administrative Record Before It, Was Reasonable, And Was Not An Abuse Of Its Discretion.*

Continental's administrative record clearly provided it with sufficient evidence with which to conclude that Ms. Marmon-Kaczorowski did not satisfy the Plan's definition of "Disability" and, therefore, was not entitled to LTD benefits.  The Court's review of this case will turn on its review of the pertinent Plan language, quoted above.  Under the Plan's definition of "Disability," Ms. Marmon-Kaczorowski is required to be "continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and not working for wages in any occupation for which *You* are or become qualified by education, training or experience."  Bates CCC00010.  Moreover, "Regular Occupation" is defined in the Plan as "the occupation that *You* are performing for income or wages on *Your Date of Disability*.  It is not limited to the specific position *You* held with *Your* employer."  Bates CCC00019.  "Material and Substantial Duties" is defined in the Plan as "the necessary functions of *Your Regular Occupation* which cannot be reasonably omitted or altered."  Bates CCC00018.

Therefore, Continental's evaluation focused on whether Ms. Marmon-Kaczorowski was unable to perform the material and substantial duties of her occupation as a senior manager.  Nothing in Ms. Marmon-Kaczorowski's medical records submitted to Continental indicated that she was unable from performing the material and substantial duties of her occupation.  Therefore, she did not satisfy the definition of "Disability" as required by the Plan and was not entitled to LTD benefits.

-18-

1.  ***Ms. Marmon-Kaczorowski Has The Burden Under The Plan To Submit Evidence That She Was Unable To Perform The Material And Substantial Duties Of Her Occupation.***

In order to qualify for LTD benefits under the Plan, it is Ms. Marmon-Kaczorowski's burden to submit proof that she was unable to perform the material and substantial duties of her occupation beyond June 20, 2002. See Abnathya v. Hoffmann - La Roche, Inc., 2 F.3d 40, 46 (3d Cir. 1993) (finding that the plan placed the burden on the participant to submit evidence to substantiate eligibility for ERISA benefits). Moreover, the language of the Plan requires the Plaintiff to provide written proof of disability to Continental. See Bates CCC00015-00016; see also Mason v. M.F. Smith & Assocs., Inc., 158 F.Supp.2d 673, 683 (D.S.C. 2001) (holding that proof to establish that the insured meets the definition of disability requires the insurer to determine whether the documents and medical tests show that the definition of disability is satisfied, whereas "written proof should establish facts about the claim" merely requires a statement of facts). Thus, proof of disability submitted by Ms. Marmon-Kaczorowski to Continental is required under the Plan. However, the materials provided by Ms. Marmon-Kaczorowski to Continental in support of her LTD claim lacked any such proof.

2.  ***Ms. Marmon-Kaczorowski Continued To Work In Her Occupation For Nearly Six Months After Initially Consulting With Her Primary Care Provider, And The Medical Records During This Period Did Not Show That She Was Unable To Perform The Material And Substantial Duties Of Her Regular Occupation.***

In fact, there was substantial evidence within Continental's claim file which supports the conclusion that Ms. Marmon-Kaczorowski was not disabled as defined in the Plan. Moreover, Ms. Marmon-Kaczorowski continued to work in her occupation for nearly six months after initially consulting with her primary care provider. The medical records during this period did

-19-

not show that Ms. Marmon-Kaczorowski was unable to perform the material and substantial duties of her regular occupation.

The medical records indicated that Ms. Marmon-Kaczorowski was initially seen by Dr. Connor on December 27, 2001, nearly six months prior to her claimed date of disability of June 20, 2002.  Although the medical records provided by Ms. Marmon-Kaczorowski throughout this time period noted various ailments, they did not establish that she was disabled as required by the Plan.  Initially, Ms. Marmon-Kaczorowsk. reported chronic pain symptoms and initial impressions included fibromyalgia, hypertension and stable migraine.  See Bates CCC00064. Laboratory results from January 10, 2002 were normal, except for elevated cholesterol.  See Bates CCC00086.  Ms. Marmon-Kaczorowski was treated again by Dr. Connor on January 29, 2002 for an injury to her left leg.  See Bates CCC00063.  X-rays taken on February 12, 2002 of the pelvis, left hip and left leg revealed only mild degenerative changes of the knee and slight narrowing of the L4-5 disk interspace.  See Bates CCC00081-00082.  On February 21, 2002, Dr. Connor treated Ms. Marmon-Kaczorowsk. for fibromyalgia symptoms and an increase in migraine symptoms.  See Bates CCC00062.  She was referred to the HealthSouth physical therapy facility and was initially treated there on March 5, 2002.

On that date, the therapist at HealthSouth noted that Ms. Marmon-Kaczorowski was complaining of diffuse pain in the extremities and spinal areas with difficulty in prolonged positions and transitional motions.  Examination at that time revealed decreased flexibility of the hamstring and Achilles tendon areas and 4/5 strength in the upper and lower extremities.  Upper body tenderness was also noted.  A program of home exercise and rehabilitative therapy three times per week was begun.  See Bates CCC00095-00097.  A progress report dated April 1, 2002

-20-

indicated that Ms. Marmon-Kaczorowski had requested discontinuing hydrotherapy and was unable to walk for more than 10 minutes without an increase in symptoms. Strength testing at that time was grossly 4/5. See Bates 00093. The HealthSouth discharge summary of May 1, 2002 indicated that Ms. Marmon-Kaczorowski was independent in ADLs and functional status, but still had pain symptoms. In fact, Ms. Marmon-Kaczorowski was discharged as a result of noncompliance with attendance. See Bates CCC00090.

Progress notes from Dr. Scott Harrison dated May 16, 2002 indicated that Ms. Marmon-Kaczorowski was treated for an upper respiratory infection, otitis media and asthma. See Bates CCC00061. Progress notes dated June 6, 2002 indicated that she was treated for an exacerbation of hypertension. See Bates CCC00060. Laboratory testing on June 8, 2002 was negative, except for elevated serum cholesterol and triglycerides. See Bates CCC00085. A renal ultrasound was performed on June 14, 2002, which was normal. See Bates CCC00074. Again, up through this time, Ms. Marmon-Kaczorowski continued to work in her occupation as a senior manager.

> 3. ***The Medical Records During The Period Following Ms. Marmon-Kaczorowski's Claimed Date Of Disability, June 20, 2002, Did Not Reflect That Her Condition Notably Changed And Still Did Not Show That She Was Unable To Perform The Material And Substantial Duties Of Her Regular Occupation.***

Even after Ms. Marmon-Kaczorowski's claimed date of disability of June 20, 2002, the medical records provided by her did not show that her condition notably changed and did not establish that she was unable to perform the material and substantial duties of her regular occupation. On June 20, 2002, Ms. Marmon-Kaczorowski returned to Dr. Connor's office at which time she complained of intermittent chest pain and an increase in her fibromyalgia and GERD symptoms. The physical examination was unremarkable, except for pain in the chest with

-21-

palpation over the left costochondral areas. An electro cardiogram revealed slow R-wave progression and non-specific ST changes. See Bates CCC00059.

Although Ms. Marmon-Kaczorowski was admitted to the hospital on June 21, 2002 for evaluation of chest pain, dizziness, shortness of breath, fatigue and nausea, the physical examination included with the discharge summary indicated that the only abnormality was mild chest pain with palpation. See Bates CCC00067. A chest x-ray on the date of admission was normal. See Bates CCC00079. A Bruce protocol stress test was performed on June 23, 2002 – Ms. Marmon-Kaczorowski exercised for five minutes, reaching 86% of the maximum predicted heart rate and a peak workload of 6 METS. The electrocardiographic portion of the test was negative with no arrhythmia and no angina was reported. The Cardiolite portion revealed no myocardial perfusion abnormalities and a normal ejection fraction of 68% and normal left ventricular wall motion. See Bates CCC00075-00078.

On July 2, 2002, Ms. Marmon-Kaczorowski was seen by a rheumatologist, Dr. Sheerin Javed. Although Dr. Javed noted tender points in multiple areas of the upper body and extremities, there was no evidence of arthritis, and she had full range of motion of her joints. Her motor and sensory functions were intact. Dr. Javed "encouraged her to start aerobic cardiovascular exercises, and discussed at length the benefits of this. From my experience, patients partaking in exercise need less medicine." A return visit was planned in two months. See Bates CCC00088.

A disability Claim Form was completed on July 8, 2002, providing that June 20, 2002 was the date of disability. In fact, this Claim Form noted an expected return to work date of "September." See Bates CCC00025.

-22-

The next progress note from Dr. Connor was dated July 9, 2002. A physical examination on that date was unremarkable, except for a gait disturbance secondary to hip pain. No swelling of the joints was noted. Dr. Connor ordered another course of physical and occupational therapy and simply stated, "out of work til well," with no other supporting documentation. See Bates CCC00058.

Ms. Marmon-Kaczorowski's initial evaluation by the physical therapist at Delaware Curative was July 15, 2002, at which time the strength in her extremities was assessed at 4- to 4+/5 with the exception of left shoulder abduction of 3/5, even though the examiner noted that maximum resistance had not been applied. Multiple areas of tenderness were palpated, but Ms. Marmon-Kaczorowski's balance was within functional limits. A course of progressive muscle strengthening, including resistance exercise, aerobics and Tai Chi were recommended at a frequency of two to three times per week for the next four weeks. See Bates CCC00065-00066.

On August 6, 2002, an interview with Ms. Marmon-Kaczorowski was conducted wherein she stated that she was able to drive an automobile to the grocery store and to her physical therapy appointments. She also indicated that she used a home computer for e-mail, talked on the telephone with her family and friends and would sometimes perform light housework or sewing if she was feeling well. See Bates 00130-00131.

On August 15, 2002, Ms. Marmon-Kaczorowski was treated in Dr. Connor's clinic for insomnia, at which time she was prescribed Ambien. She denied any symptoms of chest pain or shortness of breath. See Bates CCC00057.

On August 20, 2002, Ms. Marmon-Kaczorowski returned with multiple symptoms, including "involuntary movements of the right hand and left shoulder" and nausea. Dr. Connor

-23-

noted epigastric tenderness and sternal pain with palpation. The impressions were viral

gastroenteritis and upper extremity questionable tremor. She was treated with Tigan and clear

liquids, and additional neurological testing was ordered. See Bates CCC00056. An EKG from

that date was similar to before, compare Bates CCC00073 with Bates CCC00080, and a CT scan

of the head on August 27, 2002 was normal. See Bates CCC00068.

Dr. Connor responded to a functional assessment tool on August 27, 2002, stating that

Ms. Marmon-Kaczorowski was not capable of performing sedentary occupational activities, even

with breaks to change position. Dr. Connor merely noted Ms. Marmon-Kaczorowski's

subjective complaints: "Patient states she cannot function for more than ten minutes on phone or

sitting intermittently at computer – increasing fatigue and headaches, needs to rest. Will

reassess." Bates CCC00114.

At the next visit to Dr. Connor's office on September 13, 2002, Ms. Marmon-

Kaczorowski was still complaining of "body pain" and being unable to work. Although she

climbed onto the examination table with some difficulty, the examination was otherwise normal.

It was further noted that she was planning to return to see Dr. Javed the next week. See Bates

CCC00053, CCC00055.

There was a report of multiple laboratory studies ordered by Dr. Javed on September 26,

2002. These studies were all normal or negative, including multiple autoimmune tests, anti

double-stranded DNA, rheumatoid factor, sedimentation rate, complement levels, ANA and liver

enzymes. Serum lipids were elevated. Lyme antibodies, C-reactive protein and angiotensin

converting enzyme were negative. See Bates CCC00044-00046. Multiple x-rays ordered by Dr.

Javed were performed on September 30, 2002. Films of the hands and wrists were negative. X-

rays of the knees revealed minimal medial joint compartment narrowing bilaterally. See Bates CCC00042-00043. On September 30, 2002, Dr. Connor wrote an order to continue Ms. Marmon-Kaczorowski's physical therapy three times per week for 16 total visits. See Bates CCC00050.

On October 7, 2002, Ms. Marmon-Kaczorowski was seen by a practitioner at a primary care clinic; her physical examination was negative, except for MP joint swelling on the left fourth finger, and she was in no acute distress. See Bates CCC00049.

On October 14, 2002, Ms. Marmon-Kaczorowski returned to see Dr. Connor with further complaints of insomnia, fatigue, sore throat and pain. Examination revealed pharyngitis which was treated with Biaxin and she was advised to follow-up with the pain management specialists and her rheumatologist. See Bates CCC00048. Dr. Connor wrote an off-work note for an additional four weeks "secondary to chronic pain from fibromyalgia and chronic fatigue." Bates CCC00108.

The last progress note from Dr. Connor is dated November 12, 2002, from a routine follow-up visit. The physical examination was normal, except for bilateral foot tenderness without edema. Strength testing was 5/5 in the upper and lower extremities bilaterally, and sensory testing was also intact. Ms. Marmon-Kaczorowski was advised to follow-up with Dr. Javed, and she was also referred to Johns Hopkins for further evaluation. See Bates CCC00047. Dr. Connor filled out another prescription slip stating that Ms. Marmon-Kaczorowski was unable to return to work secondary to fibromyalgia, chronic fatigue and chronic pain. See Bates CCC00040.

4.    *Following A Full Medical Review Of Ms. Marmon-Kaczorowski's Medical Records, Continental's Consulting Internist Concluded That She Exhibited An Ability To Perform Sedentary To Light Levels Of Activity.*

On December 30, 2002, Eugene Truchelut, M.D., a consulting internist for Continental, conducted a full medical review of Ms. Marmon-Kaczorowski's medical records, and concluded:

> the medical records provided for review . . . do not describe physical, laboratory or radiological findings which would support a functional impairment that would preclude (on a continuous basis from 06/20/02 to the present), the claimant from performing the occupational demands of her own job. I would note two specific places in the record where this is more evident: On 06/23/02, only a few days after her LDW, the claimant underwent a Bruce protocol stress test in which she reached 6 METS. This would equate to an ability to perform between a light and medium level of exertion. Second, Dr. Javed, the rheumatologist, after performing a detailed history and physical on 07/02, recommended that the claimant start a program of aerobic cardiovascular exercises as part of effective treatment. Also, the claimant's ADLs indicate that she is engaging in sedentary to light levels of activity in her home life on some days.

Bates CCC00033-00034.

5.    *ERISA Does Not Require Plan Administrators To Accord Special Deference To The Opinions Of Treating Physicians.*

The mere fact that Ms. Marmon-Kaczorowski's treating doctor stated that she was not capable of performing her job does not establish that she was disabled as defined by the Plan, especially in view of the countervailing evidence in the claim file. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 829-30 (2003) (holding that ERISA does not require plan administrators to accord special deference to the opinions of treating physicians). As the Nord court stated:

-26-

> Nothing in the Act itself . . . suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion.

Nord, 538 at 831 (quotations and citations omitted).  The opinions of Ms. Marmon-Kaczorowski's treating physicians are required to be adequately substantiated by medical documentation and are to be considered in context with the provisions of the Plan.  However, there is no medical documentation that establishes that Ms. Marmon-Kaczorowski was unable to perform the material and substantial duties of her sedentary occupation.

## V.     CONCLUSION

Based upon a comprehensive review of the administrative record, particularly Ms. Marmon-Kaczorowski's medical records contained therein, there is sufficient evidence to support Continental's decision to deny Ms. Marmon-Kaczorowski's LTD claim under the Plan.  The administrative record, including the medical and vocational documentation contained therein, did not have sufficient evidence to support that Ms. Marmon-Kaczorowski was disabled as defined by the Plan as of the date she stopped working or at any time thereafter.  The medical records indicate that Ms. Marmon-Kaczorowski initially consulted with Dr. Connor on December 27, 2001, nearly six months prior to her claimed date of disability.  The medical documentation did not reflect that her condition notably changed since she stopped working or thereafter.  Therefore, under the definition of "Disability" as set forth in the Plan, Continental's decision to deny Ms. Marmon-Kaczorowski's LTD claim was supported by the administrative record.  Ms. Marmon-Kaczorowski did not establish that she was unable to perform the material and substantial duties of her regular occupation.

-27-

The Plan at issue was issued in connection with an ERISA plan.  There are no material facts disputing that the Policy's clear and unambiguous definition of disability, when applied to the evidence in Continental's administrative record, supports Continental's determination that Ms. Marmon-Kaczorowski did not satisfy the definition of "Disability."  Continental's determination that Ms. Marmon-Kaczorowski was not entitled to LTD benefits under the Plan was consistent and in accordance with the clear and unambiguous language of the Plan. The Court's review of Continental's determination is properly limited to the evidence contained within Continental's administrative record at the time of its determination.  There is no genuine issue as to any material fact and the Defendant is entitled to judgment as a matter of law. Summary judgment is, therefore, appropriate in favor of Continental.

WHEREFORE, Defendant, Continental Casualty Company, respectfully requests that this Court grant its Motion for Summary Judgment, along with any further relief to which this Court deems it entitled.

Respectfully submitted,

_____/s/_____

David G. Culley, Fed. Bar No. 2141
Susan A. List, Fed. Bar No. 3752
TYBOUT, REDFEARN & PELL
300 Delaware Avenue, Suite 1100
P.O. Box 2092
Wilmington, Delaware 19899
(302) 658-6901

-28-

_____/s/_____
J. Snowden Stanley, Jr.
SEMMES, BOWEN & SEMMES
250 West Pratt Street
Baltimore, Maryland  21201
(410) 539-5040

Attorneys for Defendant

B0530264.WPD