# Exhibit

# 1

# Continental Casualty Company



**For All the Commitments You Make®**

CNA Plaza    A Stock Company
Chicago, Illinois 60685

## AMENDMENT RIDER # 2

In consideration of the payment of the premium for the Policy to which this Rider is attached, it is hereby understood and agreed that:

The "Pre-Existing Condition" as defined in the "Glossary", and appearing in the "WHAT ARE THE EXCLUSIONS AND LIMITATIONS UNDER THIS PROGRAM?" section, shall be applied to changes in the Elimination Period from Option 2 (180 days) to Option 1 (30 days) independently based upon the Insured Employee's respective effective date under each plan.

In all other respects this policy shall remain unchanged.

This rider takes effect on **January 1, 2001** , 12:01 a.m., Standard Time, at the address of the Employer; it expires concurrently with the policy to which it is attached and is subject to all the definitions, conditions and provisions of the policy not inconsistent herewith.

Attached to and made part of Policy No. **SR# 83090156** issued to **Computer Sciences Corporation** by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

SIGNED FOR THE CONTINENTAL CASUALTY COMPANY

_Bernard L. Hengesbaugh_
Chairman of the Board

_Jonathan Kantor_
Secretary

Countersigned by _____
Licensed Resident Agent

SRR 15288

# Continental Casualty Company



**For All the Commitments You Make®**

CNA Plaza     A Stock Company
Chicago, Illinois 60685

## AMENDMENT RIDER # 1

In consideration of the payment of the premium for the Policy to which this Rider is attached, it is hereby understood and agreed that Policy Form P1-69487-A effective January 1, 1995 and all its attached Addenda, Policy Inserts, Amendments, Riders and any other attachments, are hereby deleted in their entirety.

It is further understood and agreed that Policy Form SBDI effective January 1, 2001 and all its attached Addenda, Policy Inserts, Amendments, Riders and any other attachments will replace the above.

It is also understood and agreed that any subsequent Riders under the rewritten Policy will begin with "Amendment Rider #1".

This rider takes effect on **January 1, 2001** , 12:01 a.m., Standard Time, at the address of the Employer; it expires concurrently with the policy to which it is attached and is subject to all the definitions, conditions and provisions of the policy not inconsistent herewith.

Attached to and made part of Policy No. **SR# 83090156** issued to **Computer Sciences Corporation** by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

SIGNED FOR THE CONTINENTAL CASUALTY COMPANY

_Bernard L. Hergenbuugh_
Chairman of the Board

_Jonathan Kantor_
Secretary

Countersigned by _____
Licensed Resident Agent

SRR 15288

# Continental Casualty Company



**For All the Commitments You Make**

CNA Plaza
Chicago, Illinois 60685

A Stock Company

| EMPLOYER: | Computer Sciences Corporation<br>2100 East Grand Avenue<br>El Segundo, CA 90245 |
|---|---|

| POLICY NUMBER: | SR-83090156 |
|---|---|
| EFFECTIVE DATE: | January 1, 2001 |
| ANNIVERSARY DATE: | January 1 |

*We* agree with the Employer to insure certain eligible employees of the Employer. *We* promise to pay benefits for loss covered by the policy in accordance with its provisions.

The policy is issued in consideration of the payment of premium and the statements made in the Application.

The policy takes effect on the Effective Date stated above provided at least 25% and a minimum of 10 of the eligible employees enroll on or before such date. All insurance periods will be computed from that date. The policy remains in force for the period for which premium has been paid. It may be renewed for further successive periods by payment of premium as stated in the policy.

All periods of insurance begin and end at 12:01 A.M., Standard Time, at the Employer's address as stated in this contract, and on the application.

DI-1AA

SIGNED FOR THE CONTINENTAL CASUALTY COMPANY

*Bernard L. Hengebaugh*
Chairman of the Board

*Jonathan Kantor*
Secretary

## Group Long Term Disability Policy

SBDI-P

CCC00003

## TABLE OF CONTENTS

| TITLE | PAGE |
|---|---|
| *Summary Of Benefits* | 3 |
| How Is Premium Calculated? | 5 |
| When Is Premium Paid? | 5 |
| Is Premium Payable While An Employee Receives Benefits? | 5 |
| Is There A Grace Period For Premium Payment? | 5 |
| Who May Cancel The Policy Or A Plan Under The Policy? | 5 |
| What Happens If An Inadvertent Error Occurs? | 5 |
| Will Certificates Be Issued? | 5 |
| Are *You* Eligible For This Insurance? | 7 |
| When Does *Your* Insurance Become Effective? | 7 |
| Who Pays For *Your* Coverage? | 7 |
| Is Premium Payable While *You* Receive Benefits? | 7 |
| What Happens If *We* Are Replacing An Existing Contract? | 7 |
| How Do *We* Define *Disability*? | 8 |
| What Is The *Elimination Period* And How Is It Satisfied? | 9 |
| Can *You* Satisfy *Your Elimination Period* If *You* Are Working? | 9 |
| What *Disability* Benefit Are *You* Eligible To Receive? | 9 |
| What Is *Your Benefit* And How Is It Calculated? | 9 |
| How Do *We* Define Earnings? | 9 |
| What Are The Deductible Sources Of Income? | 9 |
| What Other Sources Of Income Are Not Deductible? | 10 |
| Can *You* Work And Still Receive Benefits? | 10 |
| What Is The Minimum *Monthly Benefit* Payable Under This Program? | 11 |
| What Happens If *Your* Other Benefits Increase? | 11 |
| How Long Will *You* Receive Benefits Under This Program? | 11 |
| What Happens If *Your Disability* Recurs? | 11 |
| What Are The Exclusions And Limitations Under This Program? | 11 |
| When Will *Your* Insurance Terminate? | 12 |
| Will Coverage Be Continued If *You* Are Eligible For Leave Under FMLA? | 12 |
| What Are *Your* Conversion Options If *You* End Employment? | 12 |
| What Happens If *You* Die While Receiving Benefits? | 12 |
| What Other Services Are Available To *You* While *You* Are *Disabled*? | 13 |
| What Are The Claim Filing Requirements? | 13 |
| Time And Payment Of Claim | 14 |
| What Are The Uniform Provisions? | 15 |
| Right Of Reimbursement | 15 |
| Fraud | 15 |
| General Provisions | 15 |
| Glossary | 16 |
| Application | 18 |

Note:  All terms in *italics* are listed and defined in the Glossary or within the policy itself.

DI-2AA

2

*SUMMARY OF BENEFITS*
Effective As Of: January 1, 2001

**LONG TERM DISABILITY PLAN**

**Policy Effective Date:**          January 1, 2001

**Policy Number:**                  SR-83090156

**Class 1
Eligibility:**                      All active, full-time employees located in California who are on the U.S. payroll, or who are U.S. citizens on any foreign payroll, if such employees are employed in an expatriot status and are receiving a salary stated in U.S. dollars. Part-time, seasonal, and temporary employees are not eligible. Full-time means 30 hours per week. No waiting period for eligibility.

**Class 2
Eligibility:**                      All active, full-time employees located in New York, New Jersey, Rhode Island, Hawaii, and Puerto Rico who are on the U.S. payroll, or who are U.S. citizens on any foreign payroll, if such employees are employed in an expatriot status and are receiving a salary stated in U.S. dollars. Part-time, seasonal, and temporary employees are not eligible. Full-time means 30 hours per week. No waiting period for eligibility.

**Class 3
Eligibility:**                      All other active, full-time employees who are on the U.S. payroll, or who are U.S. citizens on any foreign payroll, if such employees are employed in an expatriot status and are receiving a salary stated in U.S. dollars. Part-time, seasonal, and temporary employees are not eligible. Full-time means 30 hours per week. No waiting period for eligibility.

**Waiting Period:**                 None

**30 Day Elimination Plan
Elimination Period:**               30 Days

**180 Day Elimination Plan
Elimination Period:**               180 Days

**Monthly Benefit:**                60% of *Monthly Earnings* to a maximum benefit of $15,000 per month subject to reduction by deductible sources of income or *Disability Earnings*.

**Social Security Offset Method:**  Family Social Security

**Employer Contribution:**          0% of premium

**Maximum Period Payable:**

| Age on Date *Disability* Commences | Maximum Period Payable |
|---|---|
| 61 years or younger | To the *Insured Employee's* 65th birthday |
| 62 years | 42 months |
| 63 years | 36 months |
| 64 years | 30 months |
| 65 years | 24 months |
| 66 years | 21 months |
| 67 years | 18 months |
| 68 years | 15 months |
| 69 years or older | 12 months |

**Other features:**

3

CCC00005

Waiver of Premium
Work Incentive Benefit
Minimum Benefit
Recurrent Disability
FMLA Coverage Extension
Conversion Option
Survivor Benefit
Vocational Rehabilitation Service
Social Security Assistance
Continuity of Coverage

This Summary of Benefits cancels and replaces all other Summaries previously issued under the policy.  It outlines the policy features.  The following pages provide a complete description of the provisions of the policy.
SOBP

4

CCC00006

## HOW IS PREMIUM CALCULATED?

Premium is calculated by multiplying the total insured *Monthly Earnings* by the rate applicable to the *Insured Employee's* attained age as of the policy effective date, the *Insured Employee's* individual effective date, or the policy anniversary date, whichever is later. A rate increase that is due to an increase in age should be applied to the *Insured Employee's Monthly Earnings* as of the policy anniversary date. Do not include *Monthly Earnings* for any individual in excess of $25,000 per month in the premium calculation.

| Class | Rate Applied to *Monthly Earnings* | |
|-------|-------------------------------------|-------------------------------------|
|       | 30 day Elimination Period Option    | 180 day Elimination Period Option   |
| 1     | 0.00392                             | 0.00286                             |
| 2     | 0.00423                             | 0.00300                             |
| 3     | 0.00630                             | 0.00447                             |

## WHEN IS PREMIUM PAID?

The policy is issued in consideration of the payment in advance of the monthly premium. The monthly premium is calculated at the premium rate stated above. Such payment must be made by the beginning of each monthly premium accounting period and must be accompanied by a premium adjustment report.

If an addition, termination or change in insurance takes place other than on a regular due date, any premium adjustment will take effect on the next due date.

If notice of termination or change is received more than six months after the termination or change became effective, *We* are not required to give a refund or credit for the period in excess of six months.

DI-3AA

## IS PREMIUM PAYABLE WHILE AN EMPLOYEE RECEIVES BENEFITS?

*We* will waive premium for an *Insured Employee* during the period of *Disability* for which the *Monthly Benefit* is payable under the policy. Premium payment is required during the *Insured Employee's Elimination Period*. During this period, the *Insured Employee's* insurance will remain in force. This provision is subject to the Termination of Employee's Insurance provision, except for payment of premium.

DI-4AA

## IS THERE A GRACE PERIOD FOR PREMIUM PAYMENT?

Yes. A grace period of 31 days from the date premium is due is allowed for the payment of premium. The policy will remain in force during the grace period. The *Employer* is liable for all premiums due for the period the policy remains in force including the grace period, if it applies.

DI-5AA

## WHO MAY CANCEL THE POLICY OR A PLAN UNDER THE POLICY?

The policy or a plan under the policy can be canceled by the *Employer*.
*We* may only cancel or offer to modify the policy if:
1. there is less than 25% participation of those eligible employees who pay all or part of their premium for a plan; or
2. there is less than 100% participation of those eligible employees for an *Employer* paid plan;
3. the *Employer* does not promptly provide *Us* with information that is reasonably required;
4. the *Employer* fails to perform any of its obligations that relate to the policy;
5. fewer than 10 employees are insured under the policy;
6. the *Employer* fails to pay any premium within the 31 day Grace Period.
If *We* cancel the policy, for reasons other than the *Employer's* failure to pay premium, a written notice will be delivered to the *Employer* at least 31 days prior to the cancellation date.

DI-7AA

## WHAT HAPPENS IF AN INADVERTENT ERROR OCCURS?

Clerical error or omissions will not: (1) deprive an employee of insurance which would otherwise have been granted; or (2) effect or continue insurance which otherwise would not be in force. An adjustment of premium will be made.

DI-8AA

## WILL CERTIFICATES BE ISSUED?

*We* will deliver certificates of insurance to the *Employer* for issuance to each *Insured Employee*. The certificates will describe the benefits, to whom they are payable, the policy limitations and where the policy may be inspected.

DI-9AA

CCC00007

# Continental Casualty Company



For All the Commitments You Make·

CNA Plaza
Chicago, Illinois 60685

A Stock Company

Having issued Policy No. SR-83090156 to

**Computer Sciences Corporation**
(Herein called the Employer)

CERTIFIES that *You* are insured provided that *You* qualify under the ELIGIBILITY provision, become insured and remain insured in accordance with the terms of the policy. *Your* insurance is subject to all the definitions, limitations and conditions of the policy. It takes effect on the effective date indicated in the EFFECTIVE DATE provision. This certificate, however, is not the policy. It is merely evidence of insurance provided under the policy. The policy can be amended by mutual consent between the Employer and *Us*.

This certificate replaces and cancels any other certificate previously issued to *You* under the policy.
CDI-1AA

The policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERSA) and any amendments. When making a benefit determination under the policy, *We* have discretionary authority to determine *Your* eligibility for benefits and to interpret the terms and provisions of the policy.
CDI-2AA

*Bernard L. Hengebaugh*
Chairman of the Board

## Group Long Term Disability Certificate

SBDI-C

CCC00008

## ARE *YOU* ELIGIBLE FOR THIS INSURANCE?

**Class 1**
All active, full-time employees located in California who are on the U.S. payroll, or who are U.S. citizens on any foreign payroll, if such employees are employed in an expatriot status and are receiving a salary stated in U.S. dollars. Part-time, seasonal, and temporary employees are not eligible. Full-time means 30 hours per week. No waiting period for eligibility.

The waiting period is stated in the *Summary of Benefits*.
CDI-4AA

**Class 2**
All active, full-time employees located in New York, New Jersey, Rhode Island, Hawaii, and Puerto Rico who are on the U.S. payroll, or who are U.S. citizens on any foreign payroll, if such employees are employed in an expatriot status and are receiving a salary stated in U.S. dollars. Part-time, seasonal, and temporary employees are not eligible. Full-time means 30 hours per week. No waiting period for eligibility.

The waiting period is stated in the *Summary of Benefits*.
CDI-4AA

**Class 3**
All other active, full-time employees who are on the U.S. payroll, or who are U.S. citizens on any foreign payroll, if such employees are employed in an expatriot status and are receiving a salary stated in U.S. dollars. Part-time, seasonal, and temporary employees are not eligible. Full-time means 30 hours per week. No waiting period for eligibility.

The waiting period is stated in the *Summary of Benefits*.
CDI-4AA

## WHEN DOES *YOUR* INSURANCE BECOME EFFECTIVE?
If *You* enroll on or before the Policy Effective Date, *Your* insurance shall take effect on such Date. If *You* enroll after the Policy Effective Date but within 31 days of becoming eligible, *Your* insurance will take effect on the date *Your* signed enrollment form is received by *Your* Employer.

If *You* enroll more than 31 days after becoming eligible, *Your* insurance will take effect after *We* approve such evidence of insurability as *We* may require. *You* will be notified of *Your* effective date.

If, because of *Injury* or *Sickness*, *You* are eligible but not *Actively at Work* on the date the insurance would otherwise take effect, it will take effect on the day after *You* return to *Active Work* for a continuous period equal to the time *You* were not *Actively Working*. This return to *Active Work* requirement will not exceed 30 days.
CDI-5AA

## WHO PAYS FOR *YOUR* COVERAGE?
*You* pay the entire cost of *Your* coverage.
CDI-6AA

## IS PREMIUM PAYABLE WHILE *YOU* RECEIVE BENEFITS?
*We* will waive premium for *You* during the period of *Disability* for which the *Monthly Benefit* is payable under the policy. Premium payment is required during *Your Elimination Period*. During this period, *Your* insurance will remain in force. This provision is subject to the Termination of Employee's Insurance provision, except for payment of premium.
CDI-6BA

## WHAT HAPPENS IF *WE* ARE REPLACING AN EXISTING CONTRACT?
**Effect on *Actively at Work* Provision**
If *You* were insured under the Prior Policy on the day before the effective date of the policy, *You* may be covered by the policy even if *You* fail to satisfy the *Actively at Work* requirement as stated in the ARE YOU ELIGIBLE FOR THIS INSURANCE? provision. *You* will receive credit for time covered under the Prior Policy. This credit will be applied toward satisfaction of service waiting periods, *Elimination Period*s or any other periods of the same or similar provisions under the policy.

CCC00009

**Effect on Benefits**

If *You* do not satisfy the *Actively at Work* requirement, *You* may still be eligible for benefits under the policy as follows: The benefits payable under the policy will be the benefit which would have been payable under the terms of the Prior Policy if it had remained in force. The benefits payable under the policy will be reduced by any benefits paid under the Prior Policy for the same *Disability*.

Benefits will end on the earliest of the following:
1.  the date that benefits would terminate in accordance with the provisions of the policy; or
2.  the date that benefits would terminate under the Prior Policy if it had remained in force.

The "Prior Policy" is the group disability insurance policy issued to the Employer by Continental Casualty Company whose coverage terminated as of the Effective Date of the policy.
CDI-7AA

**Effect on *Pre-existing Conditions***

*You* will receive credit toward satisfaction of the *Pre-existing Condition* time periods under the policy for the time *You* were covered under the Prior Policy. If, after applying the time covered under the Prior Policy, *Your Disability* is due to a *Pre-existing Condition*, benefits shall be the lesser of:
1.  the benefits payable under the policy; or
2.  the benefits that would have been payable under the Prior Policy if it had remained in force, taking into account the *Pre-existing Condition* provision, if any, of the Prior Policy.
CDI-8AA

**HOW DO *WE* DEFINE *DISABILITY*?**

*Disability* or *Disabled* means that *You* satisfy the Occupation Qualifier or the Earnings Qualifier as defined below.
CDI-9AA

**Occupation Qualifier**

"*Disability*" means that during the *Elimination Period* and the following 24 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
1.  continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and
2.  not working for wages in any occupation for which *You* are or become qualified by education, training or experience.
CDI-10AA

After the *Monthly Benefit* has been payable for 24 months, "*Disability*" means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
1.  continuously unable to engage in any occupation for which *You* are or become qualified by education, training or experience; and
2.  not working for wages in any occupation for which *You* are or become qualified by education, training or experience.
CDI-11AA

**Earnings Qualifier**

*You* may be considered *Disabled* during and after the *Elimination Period* in any Month in which *You* are *Gainfully Employed*, if an *Injury* or *Sickness* is causing physical or mental impairment to such a degree of severity that *You* are unable to earn more than 80% of *Your Monthly Earnings* in any occupation for which *You* are qualified by education, training or experience. On each anniversary of *Your Disability*, *We* will increase the *Monthly Earnings* by the lesser of the current annual percentage increase in CPI-W, or 10%.

*You* are not considered to be *Disabled* if *You* earn more than 80% of *Your Monthly Earnings*. Salary, wages, partnership or proprietorship draw, commissions, bonuses, or similar pay, and any other income *You* receive or are entitled to receive will be included. Sick pay and salary continuance payments will not be included. Any lump sum payment will be prorated, based on the time over which it accrued or the period for which it was paid.
CDI-13AA

**LOSS OF PROFESSIONAL LICENSE OR CERTIFICATION**

If *You* require a professional license or certification for *Your* occupation, loss of that professional license or certification does not in and of itself constitute *Disability* under the Occupation Qualifier or the Earnings Qualifier.
CDI-14AA

CCC00010

**WHAT IS THE *ELIMINATION PERIOD* AND HOW IS IT SATISFIED?**
The *Elimination Period* begins on the day *You* become *Disabled*. It is a period of continuous *Disability* which must be satisfied before *You* are eligible to receive benefits from *Us*. *You* must be continuously *Disabled* through *Your Elimination Period*.

If *You* temporarily recover and return to work, *We* will treat *Your Disability* as continuous if *You* return to work for a period of less than one-half the *Elimination Period* as shown in the *Summary of Benefits* not to exceed 90 days. The days that *You* are not *Disabled* will not count toward *Your Elimination Period*.

Any increases *You* receive in *Monthly Earnings* during *Your* return to work period will not be taken into consideration when calculating *Your Monthly Benefit*.

If *You* return to work for a period greater than one-half the *Elimination Period*, or 90 days, whichever is less, and become *Disabled* again, *You* will have to begin a new *Elimination Period*.

**CAN *YOU* SATISFY *YOUR ELIMINATION PERIOD* IF *YOU* ARE WORKING?**
Yes, provided *You* meet the definition of *Disability*.
CDI-15AA

**WHAT *DISABILITY* BENEFIT ARE *YOU* ELIGIBLE TO RECEIVE?**
If *You* are *Disabled*, *You* are eligible to receive one of the following at any given time: a *Monthly Benefit* or a Work Incentive Benefit. While *You* are *Disabled*, *You* might be eligible to receive one or the other of the above, but *You* cannot receive more than one of these benefits at the same time.
CDI-16AA

**WHAT IS *YOUR BENEFIT* AND HOW IS IT CALCULATED?**
*We* will calculate *Your Monthly Benefit* amount as follows:
1.   Multiply *Your Monthly Earnings* by 60%.
2.   The maximum *Monthly Benefit* is $15,000.
3.   Compare the answers from Item 1 and Item 2: The lesser of these two amounts is *Your* gross *Monthly Benefit*.
4.   Deduct other sources of income from *Your* gross *Monthly Benefit*. The resulting figure is *Your* net *Monthly Benefit*.

*We* will pay the *Monthly Benefit* for each Month of *Disability* which continues after the *Elimination Period*. The *Monthly Benefit* will not be payable during the *Elimination Period* nor beyond the *Maximum Period Payable*.

If a benefit is payable for less than one month, it will be paid on the basis of 1/30th of the *Monthly Benefit* for each day of *Disability*.
CDI-17AA

**Class 1, 2 & 3**
**HOW DO *WE* DEFINE EARNINGS?**
*"Monthly Earnings"* will equal the Monthly wage or salary that *You* were receiving from *Your* employer on the Date of *Disability*. It includes:
1.   employee contributions made through a salary reduction agreement with *Your* employer to an IRC Section 401(k), 403(b), 501(c)(3), 457 deferred compensation plan, or any other qualified or non-qualified employee *Retirement Plan* or deferred compensation arrangement; and
2.   amounts contributed to *Your* fringe benefits according to a salary reduction arrangement under an IRC Section 125 plan.
3.   Commissions averaged during the preceding 12 month period.

It does not include:
1.   Incentive pay;
2.   bonuses;
3.   overtime pay;
4.   *Your* employer's contribution on *Your* behalf to a *Retirement Plan* or deferred compensation arrangement;
5.   or any other extra compensation.
CDI-19AA

**WHAT ARE THE DEDUCTIBLE SOURCES OF INCOME?**
The *Monthly Benefit* under this policy shall be reduced by income *You* receive from other sources because of *Your Disability*, which include:
1.   *Disability* benefits *You* receive as a result of *Your Disability* under:
   a)   The Social Security Act, including any amounts for which *Your* dependents qualify because of *Your Disability*;

9

CCC00011

b) Any Workers' Compensation or Occupational Disease Act or Law, or any other law which provides compensation for an occupational *Injury* or *Sickness*;
c) Any Statutory Disability Benefit Law;
d) The Railroad Retirement Act;
e) The Canada Pension Plan, Quebec Pension Plan or any other similar provincial disability or pension plan;
f) The Canada Old Age Security Act;
g) Any Public Employee Retirement System Plan or any State Teachers' Retirement System Plan, or any plan provided as an alternative to any of the above acts or plans;
h) Any sick leave or salary continuance plan provided by or through the Employer.
2. Retirement benefits paid under the Social Security Act including any amounts for which *Your* dependents qualify because of *Your* retirement.
3. Any Vacation Pay provided by the Employer.
4. Retirement and disability benefits paid under a *Retirement Plan* provided by the Employer except for amounts attributable to *Your* contributions.

When *You* become eligible for any of the benefits listed above as a result of *Your Disability*, in addition to proof of *Disability, We* need to receive:
1. Proof that *You* applied for the Social Program benefits;
2. Written authorization for *Us* to receive information regarding the status of *Your* application;
3. Notice that the application has been approved or not approved; and
4. If the application has not been approved and there is a reasonable basis for an appeal, *We* need to receive proof that the appeal process has been followed.

**Proration of Lump Sum Awards**
If any benefit described above is paid in a single sum through compromise settlement or as an advance on future liability, *We* will determine the amount of reduction to *Your Monthly Benefit* as follows:
1. *We* will divide the amount paid by the number of months for which the settlement or advance was provided; or
2. If the number of months for which the settlement or advance was made is not known, *We* will divide the amount of the settlement or advance by the expected remaining number of months for which *We* will provide benefits for *Your Disability* based on the Proof of *Disability* which *We* have, subject to a maximum of 60 months.
CDI-20AA04

**WHAT OTHER SOURCES OF INCOME ARE NOT DEDUCTIBLE?**
*We* will not reduce *Your Monthly Benefit* by any of the following:
1. deferred compensation arrangements such as 401(k), 403(b) or 457 plans;
2. credit disability insurance;
3. pension plans for partners;
4. military pension and disability income plans;
5. franchise disability income plans;
6. individual disability income plans;
7. a *Retirement Plan* from another Employer;
8. profit sharing plans;
9. thrift or savings plans;
10. individual retirement account (IRA);
11. tax sheltered annuity (TSA);
12. stock ownership plan.
CDI-21AA

**CAN *YOU* WORK AND STILL RECEIVE BENEFITS?**
While *Disabled, You* may qualify for the Work Incentive Benefit.
CDI-22AA

**30 or 180 Day Elimination Plan**
**Work Incentive Benefit**
A Work Incentive Benefit will be provided if *You* are *Disabled* and *Gainfully Employed* after the end of the *Elimination Period*, or after a period during which *You* received *Monthly Benefits*.

The Work Incentive Benefit will be calculated during the first 12 months of *Gainful Employment* as follows:
1. The *Monthly Benefit* amount and *Disability Earnings* amount will be added together and compared to *Monthly Earnings*.
2. If the total amount in Item 1 exceeds 100% of *Monthly Earnings*, the Work Incentive Benefit amount will be equal to the *Monthly Benefit* reduced by the amount of the excess.
3. If the total amount in Item 1 does not exceed 100% of *Monthly Earnings*, the Work Incentive Benefit will be equal to the *Monthly Benefit* amount.

CCC00012

After the first 12 months of *Gainful Employment*, the Work Incentive Benefit will be equal to the *Monthly Benefit* amount less 50% of *Disability Earnings*.

The Work Incentive Benefit will cease on the earliest of the following: (1) the date *You* are no longer *Disabled*; or (2) the end of the *Maximum Period Payable*.
CDI-23AA

## WHAT IS THE MINIMUM *MONTHLY BENEFIT* PAYABLE UNDER THIS PROGRAM?

In no event will the *Monthly Benefit* payable for *Disability* be reduced to less than $100 or 10% of *Your Monthly Benefit* prior to the reductions stated above, whichever is greater. The Minimum *Monthly Benefit* does not apply if *You* are *Gainfully Employed*.
CDI-25AA

## WHAT HAPPENS IF *YOUR* OTHER BENEFITS INCREASE?

The *Monthly Benefit*, after the reductions stated above, if any, will not be further reduced for subsequent cost-of-living increases which are paid, payable, or for which there is a right under any Deductible Source of Income shown above.
CDI-26AA

## HOW LONG WILL *YOU* RECEIVE BENEFITS UNDER THIS PROGRAM?

*We* send *You* a payment each month up to the maximum duration of benefit based on *Your* age at *Disability* so long as *You* continue to be *Disabled* according to the terms of the policy:

| Age at *Disability* | Maximum Period Payable |
|---|---|
| 61 years or younger | To Your 65th birthday |
| Age 62 | 42 months |
| Age 63 | 36 months |
| Age 64 | 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 or older | 12 months |

CDI-27AA

## WHAT HAPPENS IF *YOUR DISABILITY* RECURS?

If *Disability* for which benefits were payable ends but recurs due to the same or related causes less than 6 months after the end of a prior *Disability*, it will be considered a resumption of the prior *Disability*. Such recurrent *Disability* shall be subject to the provisions of the policy that were in effect at the time the prior *Disability* began.

*Disability* which recurs more than 6 months after the end of a prior *Disability* are subject to:
1) a new *Elimination Period*;
2) a new *Maximum Period Payable*; and
3) the other provisions of the policy that are in effect on the date the *Disability* recurs.

*Disability* must recur while *Your* coverage is in force under the policy.
CDI-28AA

## WHAT ARE THE EXCLUSIONS AND LIMITATIONS UNDER THIS PROGRAM?

The policy does not cover any loss caused by, contributed to, or resulting from:
CDIX-1AA

- declared or undeclared war or an act of either;
CDIX-2AA

- *Disability* beyond 24 months after the *Elimination Period* f it is due to a *Mental Disorder* of any type. Confinement in a *Hospital* or institution licensed to provide care and treatment for mental illness will not be counted as part of the 24-month limit;
CDIX-3AA

- a *Pre-existing Condition*;
CDIX-4AA

11

CCC00013

## WHEN WILL *YOUR* INSURANCE TERMINATE?

*Your* coverage will terminate on the earliest of the following dates:

1. the date the policy is terminated; or
2. the premium due date if the Employer fails to pay the required premium for *You*, except for an inadvertent error; or
3. the date *You*:
   (a) are no longer a member of a class eligible for this insurance, or
   (b) withdraw from the program, or
   (c) are retired or pensioned, or
   (d) cease work because of a leave of absence, furlough, layoff, or temporary work stoppage due to a labor dispute, unless *We* and the Employer have agreed in writing in advance of the leave to continue insurance during such period.

Termination will not affect a covered loss which began before the date of termination.

CDI-30AA

## WILL COVERAGE BE CONTINUED IF *YOU* ARE ELIGIBLE FOR LEAVE UNDER FMLA?

In the event *You* are eligible for and *Your* Employer approves a leave under the Family and Medical Leave Act of 1993 (FMLA), insurance will continue for a period of up to 12 weeks following the date the leave begins, provided the Employer continues paying the required premium.

*You* are eligible for leave under this Act in order to provide care:

1. After the birth of a child; or
2. After the legal adoption of a child; or
3. After the placement of a foster child in *Your* home; or
4. To a *Spouse*, child or parent due to their serious illness; or
5. For *Your* own serious health condition.

While granted a Family and Medical Leave Absence:

1. The Employer will pay the required premium according to the terms of the policy;
2. *You* will be considered *Actively at Work* while on an approved Family and Medical Leave Absence; and
3. Coverage will terminate if *You* do not return to work as scheduled according to the terms of *Your* agreement with the Employer.

CDI-31AA

## WHAT ARE *YOUR* CONVERSION OPTIONS IF *YOU* END EMPLOYMENT?

If *You* end employment with *Your* Employer, *Your* coverage under the policy will end. *You* may be eligible to purchase insurance under the group conversion policy. To be eligible, *You* must have been insured under *Your* Employer's group plan for at least 12 consecutive months. *We* will consider the amount of time *You* were insured under *Our* plan and the plan it replaced, if any.

*You* must apply for insurance under the conversion policy, and pay the first (annual/semi-annual) premium within 31 days after the date *Your* employment ends.

*We* will determine the coverage *You* will have under the conversion policy. The conversion policy may not be the same coverage *We* offered *You* under the policy.

*You* are not eligible to apply for coverage under the group conversion policy if:

1. *You* are or become insured under another group long term disability plan within 31 days after *Your* employment ends;
2. *You* are *Disabled* under the terms of the policy;
3. *You* recover from a *Disability* and do not return to work for *Your* Employer;
4. *You* are on a leave of absence; or
5. *Your* coverage under the policy ends for any of the following reasons:
   a) the policy is canceled,
   b) the policy is changed to exclude the group of employees to which *You* belong,
   c) *You* are no longer in an eligible group,
   d) *You* end *Your* working career or retire and receive payment from any Employer's *Retirement Plan*, or
   e) *You* fail to pay the required premium under the policy.

CDI-32AA

## WHAT HAPPENS IF *YOU* DIE WHILE RECEIVING BENEFITS?

If *You* die after having received the benefit provided by the policy for at least 12 successive months and during a period for which benefits are payable, *We* will pay a Survivor Income Benefit. This benefit is equal to the amount *You* were last entitled to receive for the month preceding death.

12

CCC00014

The Survivor Income Benefit shall be payable on a monthly basis immediately after *We* receive written proof of *Your* death. It is payable for 6 months. The benefit shall accrue from *Your* date of death.

This benefit is payable to the beneficiary, if any, named by *You* under the policy. If no such beneficiary exists, the benefit will be payable in accordance with the TIME AND PAYMENT OF CLAIM provision.
CDI-33AA

## WHAT OTHER SERVICES ARE AVAILABLE TO *YOU* WHILE *YOU* ARE *DISABLED*?

If *You* are *Disabled* and eligible to receive *Disability* benefits under the policy, *We* will evaluate *You* for eligibility to receive any of the following. *We* will make the final determination for any of the following benefits or services.

**Vocational Rehabilitation**
"*Vocational Rehabilitation Plan*" means a plan designed by *Us* and/or *You* to assist *You* in returning to *Gainful Employment*.

If you propose a *Vocational Rehabilitation Plan* or choose to participate in a *Vocational Rehabilitation Plan* proposed by *Us*, *We* will pay for vocational rehabilitation services subject to the following conditions:

1.  *Your Disability* must prevent *You* from performing *Your Regular Occupation*;
2.  *You* must have the physical and/or mental capacities necessary for successful completion of a rehabilitation program,
3.  There is a reasonable expectation that rehabilitation services will help *You* return to *Gainful Employment*; and
4.  *You* sign a written agreement between *You* and *Us*. This agreement will include *Our* responsibilities, *Your* responsibilities and a schedule of the times and dates of the vocational rehabilitation services.

Vocational rehabilitation services might include one or more of the following:
1.  job modification;
2.  job retraining;
3.  job placement; or
4.  any other activity designed to assist You in returning to Gainful Employment.

**Social Security Assistance**
*We* contract with experienced third party advocates who can assist *You* in securing Social Security Disability benefits. At *Your* request, *We* may provide an advocate for *You* at no additional cost. *We* will also pay for advocates selected directly by *You*.
CDI-35AA04

## WHAT ARE THE CLAIM FILING REQUIREMENTS?
**Initial Notice of Claim**
*We* ask that *You* notify *Us* of *Your* claim as soon as possible so that *We* may make a timely decision on *Your* claim. *Your* Employer can assist *You* with the appropriate telephone number and address of Our Claim Department. *You* must send *Us* written notice of *Your Disability* within 30 days of the *Date of Disability*, or as soon as reasonably possible. Notice may be sent to Our Claim Department, the CNA Home Office, CNA Plaza, Chicago, Illinois 60685 or given to Our Agent.

**Written Proof of Loss**
Within 15 days of our being notified in writing of *Your* claim, *We* will supply *You* with the necessary claim forms. The claim form is to be completed and signed by *You*, *Your* Employer and *Your* Doctor. If *You* do not receive the appropriate claim forms within 15 days, then *You* will be considered to have met the requirements for written proof of loss if *We* receive written proof which describes the occurrence, extent and nature of loss.

**Time Limit for Filing *Your* Claim**
The time limit for filing *Your* claim is that *You* must furnish *Us* with written proof of loss within 90 days after the end of *Your Elimination Period*. The length of the *Elimination Period* is stated in the *Summary of Benefits* section of the policy. If it is not possible to give *Us* written proof within 90 days, the claim is not affected if the proof is given as soon as possible. However, unless *You* are legally incapacitated, written proof of loss must be given no later than 1 year after the time proof is otherwise due.

No benefits are payable for claims submitted more than 1 year after the time proof is due. However, *You* can request that benefits be paid for late claims if *You* can show that:
1.  It was not reasonably possible to give written proof during the 1 year period, and
2.  Proof of loss satisfactory to *Us* was given as soon as was reasonably possible.

CCC00015

**Proof of Disability**

The following items, supplied at *Your* expense, must be a part of *Your* proof of loss. Failure to do so may delay, suspend or terminate *Your* benefits:

1. The date *Your Disability* began;
2. The cause of *Your Disability*;
3. The prognosis of *Your Disability*;
4. Proof that *You* are receiving *Appropriate and Regular Care* for *Your* condition from a *Doctor*, who is someone other than *You* or a member of *Your* immediate family.
5. Objective medical findings which support *Your Disability*. Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for *Your* disabling condition(s).
6. The extent of *Your Disability*, including restrictions and limitations which are preventing *You* from performing *Your Regular Occupation*.
7. Appropriate documentation of *Your Monthly Earnings*. If applicable, appropriate, regular monthly documentation of *Your Disability Earnings*.
8. If *You* were contributing to the premium cost, proof of *Your* appropriate payroll deductions.
9. The name and address of any *Hospital* or *Health Care Facility* where *You* have been treated for *Your Disability*.
10. If applicable, proof of incurred costs covered under other benefits included in the policy.

**Continuing Proof of *Disability***

*You* may be asked to submit proof that *You* continue to be *Disabled* and are continuing to receive *Appropriate and Regular Care* of a *Doctor*. Requests of this nature will only be as often as reasonably necessary. If so, this will be at *Your* expense and must be received within 30 days of *Our* request, or as soon as reasonably possible.

**Physical Examination**

At *Our* expense, *We* have the right to examine *Your* person as often as reasonably required during the pendency of *Your* claim.

**Authorization and Documentation *You* Will Be Asked to Supply**

1. *You* will be required to provide signed authorization for *Us* to obtain and release all reasonably necessary medical, financial or other non-medical information which support *Your Disability* claim. Failure to submit this information will deny, suspend or terminate *Your* benefits.
2. *You* will be required to supply proof that *You* have applied for other Deductible Income Benefits such as Workers' Compensation or Social Security *Disability* benefits, when applicable.
3. *You* will be required to notify *Us* when *You* receive or are awarded other Deductible Income Benefits. *You* must tell *Us* the nature of the income benefit, the amount received, the period to which the benefit applies, and the duration of the benefit if it is being paid in installments.

CDI-36AA04

**TIME AND PAYMENT OF CLAIM**

As soon as *We* have all necessary substantiating documentation for *Your Disability* claim, *Your* benefit will be paid on a Monthly basis, so long as *You* continue to qualify for it.

*We* will pay benefits to *You* unless otherwise indicated. If *You* die while *Your* claim is open, any due and unpaid *Disability* benefit will be paid to *Your* named beneficiary, if any.

If there is no surviving beneficiary, payment may be made, at *Our* option, to the surviving person or persons in the first of the following classes of successive preference beneficiaries: *Your*: (1) *Spouse*; (2) children including legally adopted children; (3) parents; or (4) estate.

If any benefit is payable to an estate, a minor or a person not competent to give a valid release, *We* may pay up to $1,000 to any relative or beneficiary of *Yours* whom *We* deem to be entitled to this amount. *We* will be discharged to the extent of such payment made by *Us* in good faith.

CDI-37AA

**CAN YOU ASSIGN YOUR BENEFITS?**

*Your* benefits are not assignable, which means that *You* may not transfer *Your* benefits to anyone else.

CDI-38AA

**WHAT WILL HAPPEN IF A CLAIM IS OVERPAID?**

A claim overpayment can occur when *You* receive a retroactive payment from a Deductible Source of Income; when *We* inadvertently make an error in the calculation of *Your* claim; or if fraud occurs

14

In an overpayment situation, *We* will determine the method by which the repayment is made. *You* will be required to sign an agreement with *Us* which details the source of the overpayment, the total amount *We* will recover and the method of recovery. If *Monthly Benefits* are suspended while recovery of the overpayment is being made, suspension will also apply to the Minimum Monthly Benefit payable under the policy.

The overpayment amount equals the amount *We* paid in excess of the amount *We* should have paid under the policy.
CDI-39AA

## WHAT ARE THE UNIFORM PROVISIONS?
### Entire Contract; Changes
The policy, the Employer's application, *Your* certificate of coverage, and *Your* application, if any, and any other attached papers, form the entire contract between the parties. No change in the policy is valid unless approved in writing by one of *Our* officers. No agent has the right to change the policy or to waive any of its provisions.

### Statements on the Application
Any statement made by the Employer or *You*, except for fraudulent misstatements, is considered a representation and not a warranty. A copy of the statement will be provided to the Employer or *You*, whoever made the statement. No statement of the Employer will be used to void the policy after it has been in force for 2 years. No statement of *Yours* will be used in defense of a claim after *You* have been insured for 2 years, except for fraudulent misstatements.

### Legal Actions
No legal action of any kind may be filed against *Us* :
1.  within the 60 days after proof of *Disability* has been given  or
2.  more than 3 years after proof of *Disability* must be filed, unless the law in the state where *You* live allows a longer period of time.

### Conformity with State Statutes
If any provision of the policy conflicts with the statutes of the state in which the policy was issued or delivered, it is automatically changed to meet the minimum requirements of the statute.
CDI-40AA

## RIGHT OF REIMBURSEMENT
When any claim payment is made, *We* reserve any and all rights to reimbursement to the fullest extent allowed by statute and customary practice. To the extent that *You* receive a payment of funds as a result of an *Injury* or *Sickness* which exceeds the amount necessary to fully compensate *You* for all losses which *You* incurred, *We* reserve any and all rights to recover amounts which will reimburse *Us* for the benefits *We* paid which were duplicated.

Any party to this contract shall not perform any act that will prejudice such rights without prior agreement with *Us*. *We* will bear any expenses associated with *Our* pursuit of subrogation or recovery.
CDI-41AA04

## FRAUD
Any person who, knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any material false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act which is a crime and may subject such person to criminal and civil penalties. Such penalties include, but are not limited to fines, denial or termination of insurance benefits, recovery of any amounts paid, civil damages, criminal prosecution and confinement in state prison.
CDI-42AA

## GENERAL PROVISIONS
*We* have the right to inspect all of the Employer's records on the policy at any reasonable time. This right will extend until: (1) 2 years after termination of the policy; or (2) all claims under the policy have been settled, whichever is later.

The policy is in the Employer's possession and may be inspected by *You* at any time during normal business hours at the Employer's office.

The policy is not in lieu of and does not affect any requirements for coverage by Workers' Compensation Insurance.
CDI-43AA

CCC00017

GLOSSARY

*"Actively at Work"* or *"Active Work"* means the employee must be:
1.  working at the Employer's usual place of business, or on assignment for the purpose of furthering the Employer's business; and
2.  performing the *Material and Substantial Duties* of the *Insured Employee*'s *Regular Occupation* on a full-time basis.
CDID-1AA

*"Appropriate and Regular Care"* means that *You* are regularly visiting a *Doctor* as frequently as medically required to meet *Your* basic health needs. The effect of the care should be of demonstrable medical value for *Your* disabling condition(s) to effectively attain and/or maintain *Maximum Medical Improvement.*
CDID-4AA

*"Date of Disability"* is the date *Your Injury* or *Sickness* impairs *Your* ability to perform *Your Regular Occupation.*
CDID-5AA04

*"Disability"* or *"Disabled"* means that *You* satisfy either the Occupation Qualifier or the Earnings Qualifier.
CDID-6AA

*"Disability Earnings"* is the wage or salary *You* earn from *Gainful Employment* after a *Disability* begins. It does not include Social Security or any other *Disability* payment *You* receive as a result of *Your Disability.*
CDID-7AA

*"Doctor"* means a person legally licensed to practice medicine, including but not limited to psychiatry, psychology or psychotherapy, who is neither *You* nor a member of *Your* immediate family. A licensed medical practitioner is a *Doctor* if applicable state law requires that such practitioners be recognized for purposes of certification of *Disability*, and the treatment provided by the practitioner is within the scope of his or her license.
CDID-8AA04

*"Elimination Period"* means the number of calendar days at the beginning of a continuous period of *Disability* for which no benefits are payable. The *Elimination Period* is shown in the *Summary of Benefits.*
CDID-9AA

*"Gainful Employment"* or *"Gainfully Employed"* means the performance of any occupation for the Employer, another Employer or *You*, which is reasonably attainable and which offers opportunity to restore *You* as soon as practicable and as near as possible to maximum support; due consideration being given to *Your* education, training or experience, and future earnings capacity.
CDID-10AA04

*"Generally Accepted Medical Practice"* or *"Generally Accepted in the Practice of Medicine"* means care and treatment which is consistent with relevant guidelines of national medical, research and health care coverage organizations and governmental agencies.
CDID-11AA

*"Hospital or Health Care Facility"* is a legally operated, accredited facility licensed to provide full-time care and treatment for the condition(s) causing *Your Disability.* It is operated by a full-time staff of licensed physicians and registered nurses. It does not include facilities which primarily provide custodial, educational or rehabilitative care.
CDID-12AA

*"Injury"* means bodily injury caused by an accident which results, directly and independently of all other causes, in *Disability* which begins while *Your* coverage is in force.
CDID-13AA

*"Insured Employee"* means an employee whose insurance is in force under the terms of the policy.
CDID-14AA

*"Male pronoun"* whenever used includes the female.
CDID-16AA

*"Material and Substantial Duties"* means the necessary functions of *Your Regular Occupation* which cannot be reasonably omitted or altered.
CDID-17AA

CCC00018

***"Maximum Medical Improvement"*** is that level at which, based on reasonable medical probability, further material recovery from, or lasting improvement to, an *Injury* or *Sickness* can no longer be reasonably anticipated.
CDID-18AA

***"Mental Disorder"*** means a disorder found in the current diagnostic standards manual of the American Psychiatric Association.
CDID-19AA

***"Monthly Benefit"*** and ***"Maximum Period Payable"*** mean that benefit and those periods shown in the *Summary of Benefits* which apply to *You*.
CDID-20AA

***"Pre-existing Condition"*** means a condition for which medical treatment or advice was rendered, prescribed or recommended within 3 months prior to *Your* effective date of nsurance. A condition shall no longer be considered pre-existing if it causes *Disability* which begins after *You* have been insured under the policy for a period of 12 months.
CDID-21BA

***"Regular Occupation"*** means the occupation that *You* are performing for income or wages on *Your Date of Disability*. It is not limited to the specific position *You* held with *Your* employer.
CDID-22BA

***"Retirement Plan"*** means a plan which provides retirement benefits to employees and is not funded wholly by employee contributions.
CDID-24AA

***"Sickness"*** means sickness or disease causing *Disability* which begins while *Your* coverage is in force.
CDID-26AA

***"Summary of Benefits"*** means the summary which is a part of this certificate.
CDID-28AA

***"We"***, ***"Our"*** and ***"Us"*** mean the Continental Casualty Company, Chicago, Illinois.
CDID-29AA

***"You"***, ***"Your"*** and ***"Yours"*** means the employee to whom this certificate is issued and whose insurance is in force under the terms of the policy.
CDID-30AA

17

CCC00019

# Continental Casualty Company



**For All the Commitments You Make**

CNA Plaza                    A Stock Company
Chicago, Illinois 60685

## APPLICATION
is hereby made to the Continental Casualty Company for Group Disability Income Insurance by

1. Employer:              **Computer Sciences Corporation**

2. Address:               2100 East Grand Avenue

                          El Segundo, CA 90245

3. To be effective in the State of _____CALIFORNIA_____ _____ and governed by the laws thereof.

4. Coverage applied for :    Policy #: **SR-83090156**

   [ ]  Short Term Disability

   [X]  Long Term Disability

5. Eligibility:
   The classes of individuals eligible for coverage are identified in the policy.

6. Effective Date:
   The policy(ies) applied for will become effective at 12:01 A.M. Standard Time at the Applicant's address on <u>January 1, 2001</u> provided the Application is accepted in writing by the Continental Casualty Company at its Home Office, CNA Plaza, Chicago, Illinois, 60685.  It is agreed that the policy(ies) cannot become effective until a deposit premium has been paid and, as to benefits requiring contributions by the individuals insured, until at least 25% of the individuals eligible have subscribed to the policy.  The Applicant further agrees that, as to benefits not requiring contributions by the individuals insured, all eligible individuals will be insured.

By:_____
                 Applicant

_____
                 Title

_____
                 Date
SBDI-Z

CCC00020

**CNA** INSURANCE IN TOUCH WITH BUSINESS

National Accounts
PO Box 946710  Maitland  FL  32794-6710

**Chad Talbott**
Underwriter
National Accounts
Telephone    407-919-6261
                   800-303-9744 x6261
Facsimile    407-919-6407
Email        chad.talbott@cna.com

October 11, 2001

Computer Sciences Corporation
2100 East Grand Ave
El Segundo CA 90245

**Long Term Disability Coverage for Employees Providing
Technical Support to the Military of the United States'
"Operation Enduring Freedom"**

Letter of Intent to Policy 83090156:

This letter is to confirm our agreement to extend war risk coverage to employees of Computer Sciences Corporation who are providing technical support to the military of the United States' "Operation Enduring Freedom". This coverage is not extended to include the United States or Canada. War risk coverage for these employees is contingent upon the following:

- Computer Sciences Corporation will provide the name, Social Security Number, date of birth and salary data for all employees involved.

- No more than 100 employees are involved, if the number exceeds 100, Computer Sciences Corporation must notify CNA in advance for re-evaluation.

- Computer Sciences Corporation will also provide information as to the location of these employees as soon as possible, with CNA's understanding that this information is currently classified.

- The location of the employees will determine the actual rates charged:

**30 day Elimination Period**

| Description of Insured Employees | Employee Paid Portion | CSC Rate for Category 1 Countries | CSC Rate for Category 2 Countries | CSC Rate for Category 3 Countries | CSC Rate for Category 4 Countries |
|---|---|---|---|---|---|
| Class 1 | 0.392% | 1.568% | 1.176% | 0.980% | 0.784% |
| Class 2 | 0.423% | 1.692% | 1.269% | 1.058% | 0.846% |
| Class 3 | 0.630% | 2.520% | 1.890% | 1.575% | 1.260% |

180 day Elimination Period

| Description of Insured Employees | Employee Paid Portion | CSC Rate for Category 1 Countries | CSC Rate for Category 2 Countries | CSC Rate for Category 3 Countries | CSC Rate for Category 4 Countries |
|---|---|---|---|---|---|
| Class 1 | 0.286% | 1.038% | 0.752% | 0.609% | 0.466% |
| Class 2 | 0.299% | 1.072% | 0.773% | 0.624% | 0.474% |
| Class 3 | 0.477% | 1.755% | 1.278% | 1.040% | 0.801% |

- Computer Science Corporation will pay the premium for this coverage as indicated above. This will make the benefit payable under this coverage taxable to the employee at the same ratio as Computer Science Corporation's payment to the total cost of the coverage.

- Coverage is extended to the following countries only (listed by Category):

| Category 1 | Afghanistan |
|---|---|
| Category 2 | Pakistan |
| Category 3 | Saudi Arabia; Uzbekistan; Turkmenistan; Tajikistan; Kyrgyzstan; Kazakhstan; Turkey; Israel; Jordan |
| Category 4 | Romania; Serbia; Albania; Bulgaria; Montenegro; Croatia; Hungary |

- Deposit premium due for this coverage is $34,835.08. This includes a one-time assumption of risk charge of $10,000 plus 25% of CNA's estimate of the actual premium. The initial invoice for the deposit premium is attached. The final cost for this coverage will be calculated based on the actual exposure in each of the above listed locations.

- This coverage is extended for a six month period beginning November 1, 2001, with an additional six month period available if agreed to in writing by Computer Sciences Corporation and CNA.

This Letter of Intent takes effect on November 1, 2001, 12:01 A.M., Standard Time, at the address of the Holder; it expires on May 1, 2002, 12:01 A.M., Standard Time, at the address of the Holder, and is subject to all the definitions, conditions and provisions of the policy not inconsistent herewith.

This Letter of Intent is hereby made a part of Policy SR-83090156 issued to Computer Sciences Corporation by the Continental Casualty Company, General Office, Chicago, Illinois.

Signed By:

CNA Group Benefits

# Exhibit

# 2

# COMPUTER SCIENCES CORPORATION
### SHORT TERM/LONG TERM DISABILITY CLAIM FORM

INSTRUCTIONS:  Employer to complete Part I. Employee is responsible for Parts II & III.  
FAX or Mail completed form to CNA Group Benefits

CNA GROUP BENEFITS  
P.O. BOX 946710  
MAITLAND, FL 32794-6710  
PHONE: 1-800-303-9744  
FACSIMILE: 1-407-919-6409

## PART I. TO BE COMPLETED BY EMPLOYER ONLY

*** VERY IMPORTANT *** PLEASE PROVIDE A COPY OF THE JOB DESCRIPTION AND SALARY INFORMATION WHEN SUBMITTING THIS CLAIM

Division Name: **CSC**  Organization #: **620**  Telephone: **703-318-2658**

Address: **45154 Underwood Ln**  Facsimile: **703-318-2888**

**Sterling, VA-20166**

Employee's Name: **Sharon Marhon-Kaczorowski**  Full-Time Hire Date: **1/2/01**

Address: **65 Queens Way**  Date Last Worked: **6/19/02**  Return to Work Date: _____

**Newark, DE 19713**  If employee worked modified duties or partial duties since disability began, please list dates and duties performed on a separate sheet.

Telephone Number: **302-738-8867**  Occupation: **MGR**

Is Employee Eligible for Long Term Disability? ☒ Yes ☐ No  Which Elimination Option? ☒ 90 day ☐ 180 day

Effective Date of Coverage: **1/2/01**

Social Security Number: **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**  Date of Birth: **2/24/51**

Please advise if the employee is entitled to receive benefits from other sources:

State Disability: ☐ Yes ☒ No  Paid From: _____ Thru: _____ $_____ weekly or biweekly

Worker's Compensation: ☐ Yes ☒ No  Paid From: _____ Thru: _____ $_____

Name and Address of Worker's Compensation Carrier/TPA: _____  Contact Name: _____

Phone Number: _____

Is employee eligible for retirement benefits? ☐ Yes ☒ No  Date or age entitled to retirement benefits: _____

Disability premium has been paid through: **present**

Monthly base salary in effect on date disability began: **3,862.50**

| PLEASE PROVIDE A LISTING OF THE MONTHLY COMMISSIONS AND/OR FORMAL INCENTIVE SALES COMPENSATION PAID TO THIS EMPLOYEE FOR THE 12 MONTHS PREVIOUS TO THE DATE DISABILITY BEGAN FOR WHICH STD/LTD PREMIUMS WERE PAID. EXCLUDE BONUSES) |

Employer Representative Signature: *Jean M Henry*  Date: **2/19/02**

SRZ-9953-C

## PART II. INSTRUCTIONS TO EMPLOYEE

Please read, sign and date Part II. Part III of this form should be completed by your Attending Physician. Once form is fully completed, deliver to your Human Resource Representative. Delay in submitting this form may jeopardize timely benefit payments.

### CONTINENTAL CASUALTY COMPANY

Upon presentation of the original or a photocopy of this signed authorization, I authorize any medical professional, hospital or other medical-care institution, insurance support organization, pharmacy, governmental agency, insurance company, group policyholder, employer or benefit plan administrator to provide the Company designated above or an agent, attorney, consumer reporting agency or independent administrator, acting on its behalf, information concerning advice, care or treatment provided the individual named below, including information relating to mental illness, use of drugs or use of alcohol. I also authorize my employer, group policyholder or benefit plan administrator to provide the Company designated above with financial or employment-related information and to obtain information from the company as required. I understand that such information will be used by the Company designated above for the purpose of evaluating my claim for insurance benefits and that I or any authorized representative will receive a copy of this authorization upon request.

This authorization is valid from the date signed for the duration of the claim. I agree that a photographic copy of this authorization shall be as valid as the original.

_____                    06/30/02
Name of Patient/Employee Signature of Patient/Employee Authorized Representative          Date

## PART III. TO BE COMPLETED BY ATTENDING PHYSICIAN ONLY

Complete Diagnosis with Complications. If Surgery Performed, Please Describe:

Uncontrolled Hypertension    non cardiac chest pain
Chronic pain    Ambulatory dysfunction
Asthma    Migraine

| | | |
|---|---|---|
| Was Patient Hospitalized? ☑ Yes ☐ No | First Date of Treatment for this Condition: | 6-20-02 |
| If hospitalized, date admitted 6/21/02 | Date Total Disability Commenced: | 6-20-02 |
| If hospitalized, has the claimant been discharged? ☑ Yes ☐ No | Last Date of Treatment: | 6-24-02 |
| If yes, what date? 6-24-02 | Expected Return to Work Date: | Sept |
| Can Patient resume full duties upon return to work? | If Yes, please advise release date: | |
| ☐ Yes ☑ No | If no, please explain: | |

Please list all restrictions that
currently prevent a return to work

Is Disability Due to:          ☑ Sickness     Physician Name & Address   MARY Ana M. Conan
                                                                 1941 Limestone Rd
☐ Pregnancy         ☐ Injury                        Wilmington Del 19808
EDC: _____        ☐ Work Related
LMP: _____

                                    Telephone Number   302/998-1151

_____                    7/8/02
Physician Signature                              Date

**"TO ASSIST US, PLEASE ATTACH OFFICE RECORDS/NOTES/SUPPORTING DOCUMENTATION AND TEST RESULTS"**

CCC00025

# Exhibit

# 3

# CNA INSURANCE COMPANIES

*National Accounts Claims Team*
*P.O. Box 946710*
*Maitland, FL 32794*

## Claimant Telephone Interview

**CLAIMANT: Sharon Kaczorowki**
CLAIM NO:  2425101
Interviewed Performed on:  August 6, 2002

Claimant's Information is correct, claimant informed LDW 6/19/02, stopped working due to AP admitted her to the hospital for 4 days, due to severe pain from fibromyalgia. LOV: 2 wks ago, NOV: 8/15/02

Current Symptoms: Severe pain, cannot sleep, difficulty walking due to pain in both legs, drops things, using cardiac monitor due to rapid heart beats. Walks with a cane.

Physician's Names: Dr. Mary Ann Connor-PCP-302-998-1151
　　　　　　　　　　Dr. John Kamen-cardio-302-737-7676
　　　　　　　　　　Dr. Sheerin Javed-rheumatologist-302-376-6090
　　　　　　　　　　Delawer Curative-PT-302-738-3110-Gregg

Medications: Percocet-350mg-as needed-Dr.Connor
　　　　　　　Verapamil-240mg-Dr.Connor
　　　　　　　Hydrochlorothimine-25mg-Dr.Kamen
　　　　　　　Prevacid-30mg-Dr.Connor
　　　　　　　Effexor-75mg-Dr.Connor
　　　　　　　Cingulair-10mg-Dr.Connor
　　　　　　　Allegra D-1x
　　　　　　　Tramadol-250mg-Dr.Connor
　　　　　　　Flexiril-10mg-Dr.Connor

Married, 2 children (21/22) 51yrs, 5'9 tall, weighs 200lbs.

Daily Activities: Typical day consist of wakes up at 11:00am, due to interrupted sleep. EE tries to move around and does some stretching, then takes shower, no assistance needed. Fixes her own breakfast, then sits and does embroidery work or reads. Reads for about 1 hour. EE stated if she feels well will do some light house work, washes dishes, wipes down drain boards, cannot vacuum or mop. If feels good watches TV and does sewing, some days feels bad will be laying down all day. Watches TV for about 1 hour a day, if feels bad might land up watching TV all day off and on. On goods days might do grocery shopping, has someone load them light, she will bring into house.

**CNA**
For All the Commitments You Make®

Spouse takes care of the laundry. EE does drive to grocery store and physical therapy. Has computer uses for her e-mails. Listens to music. Visit with family and friends over the telephone, not for long periods of time due to hurts her hands to hold the telephone. EE stated right now the telephone is hurting her hands. Doesn't go to the Malls, cannot be out in the heat. Tries to go back to bed at 10:00pm to 11:00pm, trouble sleeping due to pain all over, worst in chest wall, arms and hands and hip joints, chins and feet.

Occupational title: Senior Manager, job duties: works in project management office, process work, a lot of trouble shooting. 90% computer work and 50% telephone work, the rest of the time is in meetings. Can takes breaks, 1 hour lunch, but she stated worked through her lunch. Manager: Tom Siaenni 302-391-7586. Enjoys job

EE stated cannot sit in front of computer, trouble shooting would wipe EE out, exhaustion.

Other Income: None

Ivonne Cotto
Resolution Management Specialist

# Exhibit

# 4

Physical Demands Analysis
CNA Page 1

Claimant: Sharon Marm~Kaczorowski
Claim #:
Date: 8/14/02

# Physical Demands Analysis

**Company:** ~~Computer Sciences Corporation~~          **Job Title:** Senior Manager

**Location:** Newark DE CCC/400          **Supervisor/Phone:**   Tom Saienni

*Please have the immediate supervisor fill out this form in black ink*

| **Primary function and components of job** | (please attach a copy of the current job description, if available) |
|---|---|

Manage new service offerings for the DuPont account

Education/training requirements: _____    License/trade requirements: _____none_____

| **How can this job be modified and for how long?** | **Are other jobs available in your company that require** *similar ability* but require *less physical effort*   NO |
|---|---|

This job requires many team and client meetings that would not
Be as effective if done off-the-job

| **Work schedule for the job** | | **Work field data** | |
|---|---|---|---|
| Hrs. per day | ___8___     Days per week  ___5___ | Machines/tools used: | X☐ Computer    X☐ Telephone |
| Shifts | ___1___     Overtime hours  ___0___ | ☐ Manual hand tools | ☐ Calculator    ☐ Motorvehicle |
| Break/lunch periods | _____1 hour_____ | ☐ Power hand tools | ☐ Fork Lift (sit)   ☐ Fork Lift (stand) |
| Work pace: | ☐✱ Self    ☐ Incentive/piece rate | ☐☐☐_____   ☐☐☐_____  ☐☐☐_____ | |
| | ☐ Machine    ☐ Set quota | Materials used: | _____ |
| Supervisory duties? | ☐ Yes    X☐ No | Describe work station: _____laptop_____ | |

## STANDING/WALKING/SITTING REQUIREMENTS

Total hours at one time (please circle one for each)          Total hours during typical workday (please circle one for each)

| Standing | 0 | .5 | 1x | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |   | Standing | 0 | .5 | 1X | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
| Walking | 0 | .5 | 1x | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |   | Walking | 0 | .5 | 1X | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
| Sitting | 0 | .5 | 1 | 2 | x | 4 | 5 | 6 | 7 | 8+ |   | Sitting | 0 | .5 | 1 | 2 | 3 | 4 | 5 | X | 7 | 8+ |

Alternate sitting and standing as needed?  Yes ☐    No ☐

## PUSHING/PULLING EXPLANATION

**Dynamic Pushing/Pulling** (pushing/pulling an object and walking/moving with it)

| Object/task description | Force to start push *(force to get object moving)* | Force to maintain push *(Force to keep object moving)* | Distance *(How far)* | Frequency *(How often)* |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

**Static Pushing/Pulling** (using a pushing/pulling motion without walking/moving with object – levers, wheels, etc.)

| Task description | Body position *(position required to push/pull)* | Force required *(push/pull force)* | Frequency *(How often)* | Duration *(How long)* |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

Physical Demands Analysis
CNA Page 2

## LIFTING/CARRYING EXPLANATION

| Task Description (Describe task, articles lifted and any mechanical assistance) | Article Weight | | Point of lift Origin (lift from where) | Point of lift Termination (set down where) | Carrying Destination (carry how far) | Frequency/ duration (how often/how long) |
|---|---|---|---|---|---|---|
| | Typical | Maximum | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| OTHER PHYSICAL DEMANDS | Not Present | <33% | 33 - 66% | >100% |
|---|---|---|---|---|
| Climbing | ☐ | ☐ | ☐ | ☐ |
| Stooping | ☐ | ☐ | ☐ | ☐ |
| Kneeling | ☐ | ☐ | ☐ | ☐ |
| Crouching | ☐ | ☐ | ☐ | ☐ |
| Handling: One hand control | ☐ | ☐ | ☐ | ☐ |
| Two hand control | ☐ | ☐ | ☐ | ☐ |
| Grasping: Right hand | ☐ | ☐ | ☐ | ☐ |
| Left hand | ☐ | ☐ | ☐ | ☐ |
| Grasp/turn: Right Hand | ☐ | ☐ | ☐ | ☐ |
| Left Hand | ☐ | ☐ | ☐ | ☐ |
| Finger dexterity | ☐ | ☐ | ☐ | ☐ |
| Reaching below shoulders | ☐ | ☐ | ☐ | ☐ |
| Reaching above shoulders | ☐ | ☐ | ☐ | ☐ |
| Reaching across | ☐ | ☐ | ☐ | ☐ |
| Reaching to floor | ☐ | ☐ | ☐ | ☐ |
| Twisting of head | ☐ | ☐ | ☐ | ☐ |
| Twisting of back | ☐ | ☐ | ☐ | ☐ |
| Upper extremity ROM | ☐ | ☐ | ☐ | ☐ |
| Whole body ROM | ☐ | ☐ | ☐ | ☐ |
| Bending at the waist | ☐ | ☐ | ☐ | ☐ |
| Operate motor vehicle | ☐ | ☐ | ☐ | ☐ |

| WORK CONDITIONS | Not Present | <33% | 33 - 66% | >100% |
|---|---|---|---|---|
| Extreme Heat | ☐ | ☐ | ☐ | ☐ |
| Extreme Cold | ☐ | ☐ | ☐ | ☐ |
| Wet/Humid | ☐ | ☐ | ☐ | ☐ |
| Fumes/Dust/Dirt | ☐ | ☐ | ☐ | ☐ |
| Confined Areas | ☐ | ☐ | ☐ | ☐ |
| High Places | ☐ | ☐ | ☐ | ☐ |
| Equipment in Motion | ☐ | ☐ | ☐ | ☐ |
| Safety Equipment/Clothing | ☐ | ☐ | ☐ | ☐ |
| Burning Materials | ☐ | ☐ | ☐ | ☐ |
| Noise | ☐ | ☐ | ☐ | ☐ |
| Environmental: Mechanical | ☐ | ☐ | ☐ | ☐ |
| Chemical | ☐ | ☐ | ☐ | ☐ |
| Electrical | ☐ | ☐ | ☐ | ☐ |
| Sharp Tools | ☐ | ☐ | ☐ | ☐ |
| Slick Floors | ☐ | ☐ | ☐ | ☐ |
| Explosives | ☐ | ☐ | ☐ | ☐ |
| Radiant Energy | ☐ | ☐ | ☐ | ☐ |
| Material Handling | ☐ | ☐ | ☐ | ☐ |
| Possible Violence | ☐ | ☐ | ☐ | ☐ |

Setting:    Inside _____ %        Outside _____ %

## TALKING/HEARING AND VISION

| Talking | | Hearing | | Vision | | |
|---|---|---|---|---|---|---|
| | X☐In person | | X☐In person | | ☐ Near | X☐Field of vision |
| | X☐On the phone | | X☐On the phone | | ☐ Midrange | ☐ Accommodation |
| | ☐ With public | | ☐ Full hearing req. | | ☐ Far | ☐ Depth perception |

| Thomas Saienni | Director | 8/15/02 |
|---|---|---|
| Person filling out form | Position | Date |

CCC00121

# Exhibit

# 5

AUG.16.2002   3:10PM   407 919 6329                                    NO.458   P.1

 CNA INSURANCE IN TOUCH WITH BUSINESS

National Disability Claims
PO Box 946710
Maitland, FL 32794-6710

## FUNCTIONAL ASSESSMENT TOOL
*********URGENT: *********
***RESPONSE NEEDED WITHIN 5 WORKING DAYS TO PROVIDE BENEFIT CONSIDERATION***

DATE:   August 16, 2002           FROM:   Ivonne Cotto
TO:   Dr. Mary Ann Connor         PHONE #:   800-303-9744 ext#6434
FAX #:   (302) 998-1154           FAX#:   407-919-6329
PATIENT / CLAIMANT NAME:   Sharon Kaczorowski
CLAIM # / EMPLOYER:   2425101 – Computer Science Corp
DOB:   2/24/51

We are the Disability Carrier for your patient's employer. To evaluate the claim, we need your assistance in completing the areas checked below. Authorization is: ☐ attached   ☐ on file   ☐ to be provided by patient

### CONFIDENTIALITY NOTICE

The information contained in this facsimile message may be legally privileged or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are notified that any dissemination, distribution or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone so that we can arrange for its disposition.

Dear Dr. Connor,

I'm assessing your patient's current level of functionality so I may more appropriately assess her return to work options.

In an interview with Ms. Connor on 8/6/02, she noted that she is able to fix meals, washes dishes, watches TV, uses her home computer and drives.

1) Do you feel your patient is capable of performing work at this time which entails primarily sitting using a computer and telephone, allows her to stand/walk as needed and is allowed to take breaks to rest and stretch?

YES _____            NO ___✓___   Date Released _____

2) If no, please provide specific medical evidence to support this opinion, including office notes, x-rays, types of medications your patient is taking.

3) What do you believe your patient's specific limitations are at this time? Duration of limitation?

*Restricts she cannot function for more than 10 min in or phone*
*A Sitting at Computer — ↑ Fatigue + HA's needs to rest*
*intermittently well in/out*

Physician's Signature: _____   Specialty: _____   Date: 8/28/02

U:\FAT- Sheila.doc

**PLEASE RETURN THE COMPLETED FORM VIA FACSIMILE**

RECEIVED TIME  AUG.28.  4:11PM

CCC00114

# Exhibit

# 6



National Account Claims                                      Ivonne Cotto
P.O. Box 946710 Maitland, FL 32794                          Disability Specialist
                                                            Telephone    800-303-9744
                                                            Facsimile     407-919-6329


September 11, 2002



Sharon Marmon-Kaczorowski
65 Queens Way
Newark, DE  19713

RE:  Claim No:  2425101
     Policy No: 83090156
     Underwritten by Continental Casualty Company
     Services Provided by CNA Group Life Assurance Company

Dear Ms. Marmon-Kaczorowski:

We are writing in regards to your claim for Long Term Disability Benefits.

According to our file, your Employer reported your last day worked as June 19, 2002. Dr. Mary A. Connor advised on the claim form that you were unable to work due to uncontrolled hypertension, chronic pain, ambulatory dysfunction, asthma and migraines as of June 20, 2002.

According to the above referenced Long Term policy, "Disability means that during the 30 day Elimination Period and the following 24 months, Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:

1.  continuously unable to perform the Material and Substantial Duties of Your Regular Occupation; and
2.  not working for wages in any occupation for which You are or become qualified by education, training or experience."

We contacted you for a claimant interview on August 6, 2002. You indicated that you stopped working and you were admitted to the hospital for 4 days due to severe pain from fibromyalgia. You also indicated that your symptoms were severe pain, difficulty sleeping and walking due to pain in both your legs. You continued to note that you are using a cardiac monitor and you walk with the use of a cane. You also noted that you are able to drive, use your home computer for e-mails and if you feel well you are able to do light house chores. You indicated that your job duties require working on a computer and telephone, trouble shooting, assisting in meetings. You also stated that you are able to take breaks.

We received information from your Employer regarding your job duties. We were advised that your job duties require working with a computer and telephone, assisting in team and client meetings. We were also advised that you are able to work at your own pace and there is no lifting required.

We sent a request to Dr. Connor and asked her if you were capable of activities involving sitting, typing, using a telephone and participating in meetings. If not, we asked her to provide medical documentation to support a functional limitation that would prevent you from doing so.

We received a medical questionnaire form signed by Dr. Connor on 8/27/02, she indicated that you stated that you are unable to function for more than 10 minutes on the telephone or sitting at a computer. She also noted your symptoms of fatigue and your need to rest intermittently. She did not include any treatment notes, diagnostic results, or physical exam findings to support an inability to work.

In summary, various attempts have been made to obtain your current medical records. In order to be eligible to receive disability benefits, your sickness must cause an impairment that continuously prevents you from working. We have not received treatment notes or other medical documentation.

While we acknowledge that you are fatigued on occasion, experience aches and pain, and use a cane to ambulate, we have received no medical information or diagnostic testing to support that your symptoms would prevent you from continuously performing the duties of your occupation. Therefore, as no medical information has been received to prove a total disability, your claim has been denied.

We are sorry our decision was not favorable; however we must rely on the totality of the medical evidence presented and the provision of the policy to make our determination.

Due to the confidential nature of your medical records, your Employer has been notified of our decision under separate cover.

If you disagree with our decision, you have the right to appeal. This appeal is afforded in accordance with the Employee Retirement Income Security Act of 1974 (ERISA), as amended, to the extent it is applicable to your claim.

If you have additional medical information not mentioned above or wish us to reconsider our decision, you should submit your formal request for reconsideration **in writing** to my attention **within 180 days of the date of this letter**. Your appeal should be addressed to:

### Attn: Ivonne Cotto
*CNA Group Benefits*
**National Accounts**
P. O. Box 946710
Maitland, FL 32794-6710

Include your **claim number** and **policy number** on any correspondence.

We will reconsider our decision at the time we receive the additional information you submit. If this information does not alter our decision, you will be informed of this and your claim will then be submitted for a formal appeal review. A ruling will be issued within 45 days of receipt of your request for reconsideration; however, you will be notified within the first 45 days if this review will require an extension of time to reach a decision.

This decision will be in writing and mailed directly to you or your representative. To the extent your claim is governed by ERISA, you have the right to bring a civil action under §502(a) of ERISA following an adverse decision on appeal.

**Appeals received later than 180 days may not be considered.**

If you have any further questions regarding your claim, please do not hesitate to call the toll-free number 800 303-9744.

Sincerely,


Ivonne Cotto
Disability Specialist

# Exhibit

# 7



**Group Disability-Claim Policy & Technical Practices**
P O Box 946710  Maitland  FL  32794-6710

**Joye M. Kelly**
Claims Consultant
Telephone  800-303-9744
x6112
Facsimile   407-919-6265

January 8, 2003

Silverman & McDonald
Attorneys at Law
Attn: Jennifer L. Irwin
1010 North Bancroft Parkway
Suite 22
Wilmington, DE  19805

Claimant:   Sharon Marmon-Kaczorowski
Claim No.:  2425101
Policy No.:  83090156
Underwritten by Continental Casualty Company
Services provided by CNA Group Life Assurance Company

Dear Ms. Irwin,

Pursuant to your request received on October 31, 2002, and perfected with additional information on November 18, 2002, for reconsideration of your client's request for benefits under the above reference disability policy, the claim was referred to Appeals for review.  We have independently and thoroughly reviewed all the evidence that has been presented during the course of your client's claim and determined that the Company's decision to deny benefits was correct.

Please refer to CNA's letter dated September 11, 2002, for the policy provisions on which CNA's benefit determination was based.  Appeal's has reviewed this information and finds it to be accurate and will not be repeated here.

We have reviewed the medical information received to date from Dr. Mary An Connor, Dr. Scott Harrison, Dr. Ying Zhu, the Physical Therapy notes from Delaware Curative, records related to a hospital confinement on 6/21/02 from Christiana Care Health Services, testing results from Papastavros' Associates, x-rays of the left lower leg, hip and pelvis, laboratory results from 6/8/02 and 1/10/02, Dr. Sheerin Javed, records from Healthsouth related to physical therapy, and the initial report of claim completed on 7/8/02 by a physician whose signature was not readable.

Your client's last date worked was reported as 6/29/02 as stated on the initial report of claim related to uncontrolled hypertension, non cardiac chest pain, chronic pain, ambulating dysfunction, asthma, and migraine.

When reviewing the information presented, we considered your client's reported symptoms and to what extent the findings on physical examination and testing results confirm the symptoms.  We also considered the impact the findings would have as far as your client's ability to function on a daily basis and how it would continuously affect her ability to perform her regular occupational work activity.

We acknowledge that based on the numerous medical records that Ms. Kaczorowski was initially seen by Dr. Connor on 12/27/01 to discuss Fibromyalgia.  There were additional office notes,

CCC00027

laboratory testing, a renal ultrasound, x-rays and physical therapy notes leading up to your client's last date worked with various complaints of pain and a left leg injury. The testing was within normal limits with the exception of your client's cholesterol levels. Following your client's last date worked of 6/19/02, there was a hospitalization on 6/23/02 related to self-reported complaints of chest pain, dizziness, shortness of breath, fatigue and nausea. While hospital confined chest x-rays were normal, a Bruce protocol stress test revealed a normal ejection fraction and a peak workload of 6 METS which equates to light to medium level work capacity and no other abnormal findings. The records (dating to November of 2002) then reflect subsequent treatment for various complaints, testing results that included an EKG, CT Scan of the head, ultrasound of the abdomen, chest x-ray, Upper GI and small bowel series, additional laboratory studies, and additional physical therapy notes. All testing was within normal limits with the exception of the ultrasound that revealed a slight increase in hepatic echogenicity. The findings on physical/clinical examination were minimal to none.

We further requested Dr. Connor complete a Functional Assessment Tool, which was completed on 8/27/02 and returned to our office on 8/28/02. Dr. Connor was asked for specific limitations and duration of the limitations. In response the doctor indicated that "Patient states she cannot function for more than 10 minutes on the phone or sitting at a computer, increased fatigue and needs to rest intermittently, will reassess".

An interview was conducted with your client on August 6, 2002. During this interview Ms. Kaczorowski revealed that a typical day consists of waking up at 11:00 am. She reported she tries to move around and stretch, then takes a shower without assistance, fixes her own breakfast, then sits and does embroidery work or reads for about 1 hour. If she feels well she will do some light housework, wash dishes, wipe down drain boards, watch television, drive to the grocery store to shop with someone loading them into the car and she will bring them into the house, she drives to physical therapy, uses the computer for e-mails, listens to music, visits with family and friends over the telephone however she stated not for long period of time because it hurts her hands to hold the telephone. She further revealed related to her job activity that she cannot sit in front of a computer, trouble shooting would wipe her out and exhaustion.

We also requested review of the information presented by a Medical Consultant of whose expertise and opinion we further relied on. The Medical Consultant opined that "the medical records provided for review do not describe physical, laboratory or radiological findings which would support a functional impairment that would preclude (on a continuous basis from 6/20/02 to the present), the claimant from performing the occupational demands of her own job". Further confirmed by the claimant's description of her activities of daily living indicate she is engaging in sedentary to light levels of activity on some days.

In light of the information presented for review that included the information as stated above, the opinion of the Medical Consultant of whose expertise we further relied on, your client's self-reported daily activities, and the physical requirements of her occupation, we have concluded that the limitations that she indicates are not commensurate with the medical findings of fact and appear to be self-limiting. The treating physician(s) further provide limitations based on your client's self reported complaints. The findings on physical/clinical examination have provided little to no explanation for your client's continued self-reported complaints and are not commensurate with any condition(s) that would reasonably be expected to cause functional impairment and that would *continuously* preclude your client from her occupational work activity. While it may be your client's contention that she is not able to work, the evidence presented does not support this.

Further, a diagnosis and continued treatment in and of itself does not document **"Disability"** as defined in the terms of the contract without medical documentation that would support a functional impairment exists, and that would support inability of your client to perform her *sedentary-type* occupational work activity.

CCC00028

Based on the totality of the information before the Committee, it has no choice but to find the previous decision of September 11, 2002, to be correct and proper. We are sorry that our determination could not be more favorable. This completes the appeal review. All administrative remedies offered by the Appeals process have been exhausted. This decision is final and binding.

Sincerely,

Joye M. Kelly
Appeals Committee Member